832 So.2d 474 (2002)
MISSISSIPPI POWER & LIGHT CO.
v.
Kenneth D. COOK.
No. 2001-CA-00079-SCT.
Supreme Court of Mississippi.
December 5, 2002.
*477 Andrew D. Sweat, Natie P. Caraway, James Lawton Robertson and James W. Snider, Jr., Jackson, attorneys for appellant.
George McDowell Yoder, III, John G. Holaday, Jackson, James A. Woods, Jr., Tim Waycaster, Mary Margaret Waycaster, Natchez, David Wayne Baria, Jackson, attorneys for appellee.
EN BANC.
SMITH, P.J., for the Court.
¶ 1. The complaint in this matter was filed on July 31, 1991, by Kenneth D. Cook ("Cook") against Mississippi Power & Light Company ("MP&L") in the Circuit Court of the First Judicial District of Hinds County, Mississippi. After a change of counsel an amended complaint was filed on July 30, 1996. MP&L filed Motions to Dismiss, Summary Judgment and Partial Summary Judgment. All of these were denied.
¶ 2. On October 2, 2000, this matter came before the Hinds County Circuit Court, Honorable Tomie T. Green presiding and sitting with a jury. The jury returned a verdict for Cook for $150,000 in actual damages and $5,000,000 in punitive damages. Final judgment was entered on October 10, 2000, in favor of Cook.
¶ 3. Thereafter, Cook filed a Motion to Assess Attorneys' Fees and PreJudgment Interest and was awarded $2,060,000. MP&L filed a Motion for Judgment Notwithstanding the Verdict, or, in the alternative for a New Trial. The trial court denied those motions on November 28, 2000, and this appeal followed.

FACTS
¶ 4. Kenneth Cook is a former employee of MP&L. He worked for MP&L from *478 1983 until September 26, 1989. Following an on the job injury (three are alleged), Cook received workers' compensation benefits from MP&L and medical treatment. In making its determination to cut off Cook's benefits completely, MP&L relied upon two reports from treating physicians which said Cook had a 15% permanent impairment to the right shoulder. Cook filed his claims with the Mississippi Workers' Compensation Commission. MP&L and Cook reached a settlement, whereby MP&L paid Cook $55,000, which was approved by the Commission. However, in the settlement Cook reserved the right to bring a bad faith claim against MP&L. Shortly thereafter, Cook filed a complaint against MP&L in the Circuit Court of Hinds County asserting that MP&L halted his workers' compensation benefits in bad faith, among other claims. A verdict was rendered by a jury in favor of Cook and he was awarded $150,000 in actual damages, $5,000,000 in punitive damages, and $2,060,000 in attorneys' fees. Aggrieved, MP&L appeals to this Court.

STANDARD OF REVIEW
¶ 5. There are several standards of review that must be used in analyzing the issues in this appeal. First, when reviewing jury instructions on appeal, they must be read as a whole. Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp., 743 So.2d 954, 968 (Miss.1999). Additionally, the standard of review of jury verdicts is as follows:
Once the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found.
(citing Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985)).
¶ 6. The standard of review for the denial of a motion for directed verdict and a motion for judgment notwithstanding the verdict are identical. Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997). This Court will consider the evidence in light most favorable to the appellee, giving the appellee the benefit of all favorable inferences that may be reasonably drawn from the evidence. General Motors Acceptance Corp. v. Baymon, 732 So.2d 262, 268 (Miss.1999) (citing Steele, 697 So.2d at 376). If the facts are so overwhelmingly in favor of the appellant that reasonable jurors could not have arrived at a contrary verdict, this Court must reverse and render. Id. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, this Court must affirm. Id.
¶ 7. The standard of review regarding attorneys' fees is the abuse of discretion standard. "The fixing of reasonable attorneys' fees is a matter ordinarily within the sound discretion of the trial court...." Gilchrist Tractor Co. v. Stribling, 192 So.2d 409, 418 (Miss.1966). This Court has held:
It is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court and any testimony by attorneys with respect to such fees is purely advisory and not binding on the trial court. We will not reverse the trial court on the question of attorney's fees unless there is a manifest abuse of discretion in making the allowance....
Mauck v. Columbus Hotel Co., 741 So.2d 259, 269 (Miss.1999).

*479 DISCUSSION

I. WHETHER PLAINTIFF COOK WAS ENTITLED TO MAINTAIN THIS ACTION FOR BAD FAITH REFUSAL TO PAY COMPENSATION BENEFITS CONSISTENT WITH THE DOCTRINE OF EXCLUSIVE ADMINISTRATIVE JURISDICTION WITHOUT HAVING FIRST SECURED RULINGS FROM THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION THAT HE WAS ENTITLED TO FURTHER BENEFITS, OR THAT MP&L HAD VIOLATED SOME DUTY TO COOK UNDER THE MISSISSIPPI WORKERS' COMPENSATION LAW.
¶ 8. Miss.Code Ann. § 71-3-9 (2000) provides that liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee. While MP&L correctly states that the Mississippi Workers' Compensation Law is the exclusive remedy provision for workers' compensation, the independent tort of bad faith refusal to pay compensation is an exception to this provision. See S. Farm Bureau Cas. Ins. Co. v. Holland, 469 So.2d 55, 59 (Miss.1984); Luckett v. Miss. Wood, Inc., 481 So.2d 288, 290 (Miss.1985); McCain v. Northwestern Nat'l Ins. Co., 484 So.2d 1001, 1002 (Miss.1986); Leathers v. Aetna Cas. & Surety Co., 500 So.2d 451, 453 (Miss.1986). All of these cases "recognized exceptions to the exclusivity of the Act but only when based on tortious conduct subsequent to the work place injury." Peaster v. David New Drilling Co., 642 So.2d 344, 348 (Miss.1994). Just as in the case sub judice, these cases involved bad faith refusal to pay benefits.
¶ 9. In order to prevail in a claim for damages for bad faith there must be a determination as to whether there was a legitimate or arguable reason to deny the benefits, Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797, 801 (Miss.1979), and/or that the denial constituted a willful or malicious wrong in disregard for his rights. Weems v. American Sec. Ins. Co., 486 So.2d 1222, 1226-27 (Miss.1986). Really the only test set out in Miller v. McRae's, Inc., 444 So.2d 368 (Miss.1984), is whether the injury is compensable under the act. The two prongs of the test are not separate requirements, but rather part of the inquiry into whether the injury is compensable. Furthermore, where there is a legitimate or arguable basis in the delay or denial of payments, there is no valid claim for punitive damages. Mutual Life Ins. Co. v. Estate of Wesson, 517 So.2d 521, 527 (Miss.1987).
¶ 10. MP&L argues that Cook should have exhausted his administrative remedies with the Worker's Compensation Commission. Per Miss.Code Ann. § 71-3-53 (2000), Cook could have taken the opportunity to reopen his settlement agreement within one year from the actual settlement. However, based on the case law cited herein, bad faith refusal to pay benefits is clearly an exception to the Act and may properly be brought in the circuit court.
II. WHETHER CERTAIN CORE AND OUTCOME DETERMINATIVE ISSUES IN THIS CASE WERE WITHIN THE PRIMARY JURISDICTION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION, BECAUSE OF WHICH COOK SHOULD NOT HAVE BEEN ALLOWED TO PROCEED WITHOUT FIRST SECURING RULINGS FROM THE COMMISSION THAT HE WAS ENTITLED TO FURTHER BENEFITS, *480 OR THAT MP&L HAD VIOLATED SOME DUTY OWED TO COOK UNDER THE MISSISSIPPI WORKERS' COMPENSATION LAW.
¶ 11. Campbell Sixty-Six Express, Inc. v. J. & G. Express, Inc., 244 Miss. 427, 141 So.2d 720, 725 (1962) states that the doctrine of primary jurisdiction "determines whether the court or the agency should make the initial decision." As previously discussed, the Mississippi Workers' Compensation Act is the exclusive remedy provision for workers' compensation, however, the independent tort of bad faith refusal to pay compensation is an exception to this provision. Per the analysis of the first issue, this case was properly brought in circuit court.
¶ 12. MP&L states in its brief, "Cook much preferred to have the Circuit Court and its jury delving into issues that were at the core of the experience of the Commission and that were at the heart of the case, without the benefit of the Commission's views." It was Cook's choice to decide where to bring this suit, and the circuit court clearly had jurisdiction.
¶ 13. MP&L argues that Cook should have brought the action under the Act based on a change of condition or because of a mistake in a determination of fact. However, Cook is not claiming a mistake in determining his disability but rather an independent tort which falls outside of the Act. Additionally, in Cook's settlement agreement, he reserved the right to bring a bad faith claim against MP&L.
III. WHETHER COOK HAD FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES, AND, BEYOND THAT, HE WAIVED THEM.
¶ 14. Clearly Cook did not fail to exhaust his administrative remedies available to him. He settled his claim, and the order was approved by the Workers' Compensation Commission along with his reservation of rights to bring a bad faith claim. Under the caselaw cited herein, the intentional tort of bad faith refusal to pay a claim falls outside of the Act and may be brought in circuit court. Under Miss.Code Ann. § 71-3-37(10) the Commission is entitled to approve settlements only when it is in the best interest of a "person entitled to compensation." Thus, clearly Cook was entitled to compensation based on the settlement agreement approved by the Commission.
¶ 15. The cause of action asserted in this lawsuit by Cook is the bad faith intentional tort in handling his claim, which is recognized as falling outside of the authority of the Workers' Compensation Commissions. Holland, 469 So.2d at 59. Further, MP&L did not have any pending claims before the Commission when it brought this lawsuit. We have held previously that a claimant could not maintain a bad faith action against an employer for refusal to pay for disputed medical services and supplies absent the Commission's prior determination that those services and supplies were reasonable and necessary. Walls v. Franklin Corp., 797 So.2d 973, 974 (Miss.2001). However, what distinguishes that opinion from the present case is that Cook's settlement claim had been approved by the Commission and nothing was left pending before them.
IV. WHETHER THERE WAS AN ARGUABLE BASIS TO DISCONTINUE COOK'S DISABILITY BENEFITS.
¶ 16. While MP&L argues that "Cook has offered nothing to show that MP&L has acted out of malice, with gross neglect or otherwise tortiously," per the requirements of the Miller test, the denial *481 of benefits does not have to be willful or malicious but there may not be an arguable basis to deny the claims. Miller v. McRae's, Inc., 444 So.2d 368 (Miss.1984).
¶ 17. It is the trial judge's responsibility to determine whether there was an arguable basis, legal or factual, for the denial or termination of benefits. Andrew Jackson Life Insurance Co. v. Williams, 566 So.2d 1172, 1184 (Miss. 1990). However, most pertinent for the present case is Reserve Life Insurance Co. v. McGee, 444 So.2d 803, 809 (Miss.1983), where we have stated that "in the event the trial [judge] determines that as a matter of law it cannot hold that the insurer had a legitimate and arguable defensive position, but that the evidence constituted disputed facts as to whether or not such situation existed, then the trial [judge] should submit [the arguable basis and punitive damages] issue[s] to the jury." This is exactly what the trial judge did in this case. In bad faith MP&L cut off Cook's benefits entirely rather than paying appropriate disability for a 15% permanent impairment to the right shoulder, which is what two doctors' reports found. The motion for a directed verdict was properly denied because the trial judge determined that there were disputed facts. The facts are not so overwhelmingly in favor of MP&L that we must reverse and render. In fact, they show that MP&L should have paid Cook for his 15% impairment rating.
V. WHETHER COOK'S CLAIM THAT HE WAS FORCED TO SETTLE UNDER DURESS FAIL PROCEDURALLY OR SUBSTANTIVELY.
¶ 18. Cook's claim that he was forced to settle his workers' compensation claim under duress does not fail either procedurally or substantively. MP&L once again argues that this case is improperly in the circuit court and that it should be in front of the Workers' Compensation Commission. Again, this argument is misplaced because a bad faith refusal to pay claim may be properly brought in circuit court. Holland, 469 So.2d at 59. Thus, procedurally this claim is not barred.
¶ 19. Cook's claim of duress is part of his bad faith claim that he reserved the right to bring within his settlement with MP&L before the Commission. Thus, by the very nature of the claim, duress is a part of the claim for bad faith.
VI. WHETHER THE CIRCUIT COURT "MISHANDLED" COOK'S BANKRUPTCY "MANIFOLD."
¶ 20. Under 11 U.S.C. § 521 a debtor in bankruptcy has a duty to file a listing of all of his assets and liabilities. Cook filed his Voluntary Petition under Chapter 7 of the Bankruptcy Act on September 10, 1993. However, he did not disclose this claim in the bankruptcy proceeding due to his belief that this claim would not amount to anything. Furthermore, his attorney advised him that it was not necessary to disclose this to the Bankruptcy Court. When MP&L sought to have the bankruptcy proceedings reopened, Cook amended Item 20 on Schedule B to reflect his claim on February 12, 1999.
¶ 21. The circuit court held that the bankruptcy documents could be used for impeachment, but the entire bankruptcy file could not be admitted into evidence because it might confuse the jury. The jury heard what Cook said was his reason for not disclosing this information to the bankruptcy court, and the jury was allowed to take this into consideration in determining the credibility of Cook. It is for the jury, not a reviewing court, to determine the credibility of a witness. See Groseclose v. State, 440 So.2d 297, 300 *482 (Miss.1983); Independent Life & Acc. Ins. Co. v. Mullins, 252 Miss. 644, 173 So.2d 663, 664 (1965). The jury has the opportunity to observe the witness, whereas, a reviewing court does not have that luxury. Cook stated, "My attorney said as far as he was concerned the case was dead. He recommended it not be included."
¶ 22. Judicial estoppel is a doctrine of law applied by a trial court to a situation where a party asserts one position in a prior action or pleading but then seeks to take a contrary position to the detriment of the party opposite. Mauck v. Columbus Hotel Co., 741 So.2d 259, 264 (Miss.1999); Skipworth v. Rabun, 704 So.2d 1008, 1015 (Miss.1996). This Court stated the following in Beyer v. Easterling, 738 So.2d 221, 227 (Miss.1999):
Clearly, testimony given in a prior action does not estop the witness from testifying to the contrary in a subsequent action against one not a party to the prior action, where the former testimony was given by mistake or inadvertence or without full knowledge of the facts and is so explained by the witness in a subsequent action. In other words, the oath, to be binding as an estoppel, must be willfully false, or must have the effect of misleading the other party to his injury....28 Am.Jur.2d Estoppel and Waiver §§ 71, at 702 (1996)(footnotes omitted).
Cook explained his actions in the bankruptcy proceeding, and it was correctly left to the jury to determine his credibility. Cook did not make a willfully false statement that led MP&L to injury. On the advice of counsel, Cook did not disclose the present lawsuit because he thought it was dead. Additionally, MP&L was not a debtor to whom Cook owed money in the bankruptcy proceeding. This issue is without merit.
VII. WHETHER THE COURT ERRED IN FAILING TO GRANT JURY INSTRUCTION D-14 REGARDING MP&L'S QUALIFIED PRIVILEGE TO COMMUNICATE WITH CIGNA REGARDING THE ADMINISTRATION OF A CLAIM MADE UNDER THE CIGNA POLICY.
¶ 23. Cook testified that his signature on a CIGNA authorization form gave MP&L authority to process his long-term disability payments. Based on this testimony it is clear that the jury could decide if they felt that MP&L acted with bad faith in notifying CIGNA of Cook's pastor job that was in the newspaper. Certainly MP&L had an interest in keeping its payments down to CIGNA. It is clear from the release that Cook signed that MP&L had the authority to release to CIGNA any information regarding employment or income about Cook.
¶ 24. As stated previously herein, when reviewing jury instructions on appeal, they must be read as a whole. See Rials v. Duckworth, 822 So.2d 283, 286 (Miss.2002); Sentinel Indus. Contracting Corp., 743 So.2d at 968. It is not certain that taken as a whole the failure of the trial court not to include an instruction focusing on the relationship between CIGNA and MP&L would have affected the outcome of this trial. The jury was in a position to determine whether the actions made by MP&L in regards to CIGNA were made in bad faith. The testimony regarding the release was clearly in the record and there for the jury to consider in reaching its verdict.
VIII. WHETHER THE CIRCUIT COURT ERRED WHEN IT ALLOWED COOK TO CROSS-EXAMINE MP&L'S ROBERT HEMPHILL *483 ABOUT THE APPORTIONMENT STATUTE.
¶ 25. The portion of the statute that MP&L argues should not have been brought before the trial court is as follows:
(b) The employer and carrier does not have the power to determine the date of maximum medical recovery or percentage of apportionment. This must be done by the attorney-referee, subject to review by the commission as the ultimate fact finder.
Miss.Code Ann. § 71-3-7(b). Cook admits in his brief that "while the language of § 71-3-7(b) may not be strictly applicable to this case, it is not an incorrect statement of Mississippi's workers' compensation law." That is a true statement in that the statute clearly reflects part of workers' compensation law. However, in this context per MP&L's witnesses, Martha Griffin and Robert Hemphill, the employer did not have the right to determine when a claimant had reached maximum medical recovery. However, this statute deals with apportionment while the present case clearly did not.
¶ 26. It should not have been brought before the trial court. However, it is harmless error.
IX. WHETHER THE COURT ERRED IN LIMITING THE TESTIMONY OF FORMER MWCC ADMINISTRATIVE LAW JUDGE MARTHA GRIFFIN.
¶ 27. "A trial judge's determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion and that decision will only be disturbed when there has been a clear abuse of discretion." Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1357 (Miss.1990); Sheffield v. Goodwin, 740 So.2d 854, 856 (Miss.1999). MP&L cannot show that there was an abuse of discretion in the trial court limiting this testimony. We do not believe that it was error for the trial court to limit what Former MWCC Administrative Law Judge Martha Griffin was allowed to testify to in this case.
¶ 28. Cook cites a Fifth Circuit case, Owen v. Kerr-McGee Corp., 698 F.2d 236 (5th Cir.1983), wherein the Court interpreted Fed.R.Evid. 704 which Miss. R. Evid. 704 mirrors. In that case, the trial court limited an expert's testimony as to the legal cause of an action. Id. at 239-40. There the witness was not allowed to testify to the ultimate issue because that is the role of the jury to determine. Id. Just as in the case sub judice, it was not for Martha Griffin to testify to the ultimate issue. That was for the jury to determine.
¶ 29. The compounded problem with Griffin's potential testimony was that the jury may have placed too much weight on her opinion because she was actually an administrative judge sitting for the Commission when this claim came before it. MP&L was basically wanting to ask her how she would have ruled on a particular case such as this one. However, she was able to testify to key elements of the bad faith claim. For example, she gave testimony saying that it was not unusual for the term "maximum medical recovery" to not be used by physicians. The trial court did not err in limiting her testimony.
X. WHETHER JURY INSTRUCTION NO. 9 WAS REVERSIBLY ERRONEOUS IN FORM OR SUBSTANCE.
¶ 30. When reviewing jury instructions on appeal, they must be read as a whole. Sentinel Indus. Contracting Corp., 743 So.2d at 968. Jury Instruction No. 9 was given to the jury as follows in part:

*484 You are instructed that under Mississippi law, the provisions of the Mississippi Workers' Compensation Act are to be construed liberally and that doubtful cases are to be resolved in favor of compensation so that the beneficial purposes of the law will be achieved.
MP&L argues that the instruction is erroneous because that is the standard used in workers' compensation cases before the Commission and should not be used in circuit court. However, when read in its entirety, we find that granting this instruction was not reversible error. The instruction continues as follows:
You are further instructed that under Mississippi law, a company's refusal to pay a legitimate claim without or arguable reason, may give rise to an action for bad faith.
Therefore, if you find by a preponderance of the evidence in this case that Mississippi Power and Light refused to pay Kenneth Cook's claim for workmen's compensation benefits and did so without a legitimate or arguable reason, then you may assess damages against Mississippi Power and Light in accordance with the Court's other instructions.
While the substance of the instruction is not correct, it is not reversible error when read as a whole. "Imperfections in particular instructions do not require reversal where all seen together fairly announce the primary rules applicable to the case." See, e.g., Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1157 (Miss.1992); Purina Mills, Inc. v. Moak, 575 So.2d 993, 996 (Miss.1990); Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40 (Miss.1989).
¶ 31. The standard cited in the beginning of the instruction is a standard used by the Workers' Compensation Commission to determine benefits. However, its use in this instruction is not sufficiently prejudicial to MP&L to require a reversal.
XI. WHETHER THE COURT ERRED IN CHANGING DEFENDANT'S JURY INSTRUCTION D-15 REQUIRING "ACTUAL KNOWLEDGE" AS AN ELEMENT OF BAD FAITH TO "KNEW OR SHOULD HAVE KNOWN," THUS CONVERTING THE INTENTIONAL TORT OF BAD FAITH REFUSAL TO A NEGLIGENCE TORT.
¶ 32. Jury Instruction No. 8/D-15 reads as follows:
The Court instructs the jury that to prove a bad faith denial of workers' compensation benefits against MP&L, Ken cook must prove 1. There was an intentional refusal by MP&L to continue temporary total disability benefits;
2. There was no legitimate reason or arguable basis for terminating the temporary total disability benefits; and
3. MP&L knew or should have known that there was no legitimate reason for paying the claim.
If you find that any one or more of the above have not been proved by Ken Cook, then you cannot return a verdict or award damages in his favor.
MP&L correctly points out in its brief cases such as Patton-Tully Transp. Co. v. Douglas, 761 So.2d 835, 844 (Miss.2000), wherein the above language of "knew or should have known" is a negligence standard. MP&L correctly believes that the third part of the instruction which says "knew or should have known" was error in that it changes the standard to a negligence one. However, as Cook's brief points out, the use of the word "intentional" in the first portion of the instruction sounds like an intentional tort instruction.
*485 ¶ 33. Again, viewing the jury instructions as a whole, this is also harmless error.
XII. WHETHER THE CIRCUIT COURT ERRED WHEN IT REFUSED TO VACATE THE JURY'S ASSESSMENT OF PUNITIVE DAMAGES ON GROUNDS
(A) PLAINTIFF'S PROOF FAILED TO SATISFY ANY OF THE LEGALLY APPLICABLE STANDARDS FOR THE ASSESSMENT OF PUNITIVE DAMAGES; AND/OR
(B) THE VERDICT WAS THE PRODUCT OF BIAS, PASSION AND PREJUDICE AGAINST MP&L.
¶ 34. "Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed `within caution and with narrow limits.' "Life & Cas. Ins. Co. of Tenn. v. Bristow, 529 So.2d 620, 622 (Miss.1988). Punitive damages may not be assessed against the defendant unless the defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss.Code Ann. § 11-1-65(1)(a)(2002).
¶ 35. There are several factors we have discussed in Mutual Life Ins. Co. v. Estate of Wesson, 517 So.2d 521, 532 (Miss.1987) which are general factors to consider in awarding punitive damages. Those include the following: (1) an amount necessary to deter defendant from such wrongdoing in the future; (2) an amount to make an example of the defendant; (3) and the financial worth of the defendant. Id. See also MIC Life Ins. Co. v. Hicks, 825 So.2d 616 (Miss.2002).
¶ 36. In Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), the United States Supreme Court determined that the jury's award of punitive damages is not a finding of fact, but rather is expression of moral condemnation, and thus de novo review of that award is consistent with due process and does not impair the prevailing party's right to a jury trial. Cooper also affirmed the three factors discussed in Mutual Life. 532 U.S. at 424, 121 S.Ct. 1678.
¶ 37. Where there is a legitimate or arguable basis in the delay or denial of payments, there is no valid claim for punitive damages. Mutual Life Ins. Co. v. Estate of Wesson, 517 So.2d at 527. The jury found in this case that there was no legitimate or arguable basis for MP&L to deny Cook's workers' compensation claim. Therefore, in the arena of the intentional tort of bad faith refusal to pay workers' compensation, punitive damages would be appropriate in the present case. However, in BMW of North America, Inc. v. Gore, 517 U.S. 559, 574, 116 S.Ct. 1589, 1599, 134 L.Ed.2d 809 (1996), the Court stated, "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."
¶ 38. Based on the factors laid out in Mutual Life, the $5,000,000 awarded in this case is excessive and a remittitur should be entered in accordance with the authority of Miss.Code Ann. § 11-1-55 (2002). These damages are clearly based on prejudice and bias of the jurors because MP&L's conduct is not so reprehensible to demand this degree of punishment. Based on the facts of this case, we hold that there should be a remittitur of $4,500,000 on the punitive damages of $5,000,000. If the appellee, Cook, accepts such remittitur so as to reduce the punitive damage award to *486 $500,000 within ten days after judgment of this Court becomes final, then the award as reduced will be affirmed. Otherwise, the cause should be reversed and remanded to the circuit court for trial upon the issue of punitive damages. The verdict clearly evidenced bias and prejudice by the jury.
XIII. WHETHER THE CIRCUIT COURT ERRED PROCEDURALLY IN CONSIDERING PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES WITHOUT ADEQUATE NOTICE OR OPPORTUNITY FOR HEARING OR CROSSEXAMINATION AND WITHOUT REQUIRING THAT A COURT REPORTER BE PRESENT.
¶ 39. The standard of review regarding attorneys' fees is the abuse of discretion standard, and such awards must be supported by credible evidence. Regency Nissan, Inc. v. Jenkins, 678 So.2d 95, 103 (Miss.1995). "The fixing of reasonable attorneys' fees is a matter ordinarily within the sound discretion of the trial court...." Gilchrist Tractor Co. v. Stribling, 192 So.2d 409, 418 (Miss.1966). We have held:
It is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court and any testimony by attorneys with respect to such fees is purely advisory and not binding on the trial court. We will not reverse the trial court on the question of attorney's fees unless there is a manifest abuse of discretion in making the allowance....
Mauck v. Columbus Hotel Co., 741 So.2d 259, 269 (Miss.1999).
¶ 40. Absent some statutory authority or contractual provision, attorneys' fees cannot be awarded unless punitive damages are also proper. Aetna Cas. & Sur. Co. v. Steele, 373 So.2d 797, 801 (Miss.1979). Where punitive damages are awarded by the jury, attorneys' fees are justified. See Smith v. Dorsey, 599 So.2d 529, 549-50 (Miss.1992); Defenbaugh and Company of Leland v. Rogers, 543 So.2d 1164, 1167 (Miss.1989) Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 465 (Miss.1983). The reasonableness of an attorney's fee award is determined by reference to the factors set forth in Rule 1.5 of the Mississippi Rules of Professional Conduct. This Rule provides in pertinent part:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
Miss. R. Prof'l Conduct 1.5. See also Richardson v. Canton Farm Equip., Inc., 608 So.2d 1240, 1256 (Miss.1992); Carter v. Clegg, 557 So.2d 1187, 1192 (Miss.1990); McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982). These factors are sometimes referred *487 to as the McKee factors. In addition to these factors, the Legislature gives additional guidance to courts in determining the reasonableness of attorney's fees by instructing the court to "make the award based on the information already before it and the court's own opinion based on experience and observation...." Miss. Code Ann. § 9-1-41 (1991).
¶ 41. The trial court found in its Final Judgment Ordering Payment of Plaintiff's Attorney Fees the following:
The court finds that the herein cause has been litigated for more than nine (9) years at considerable risk to plaintiff's counsel. Additionally, Defendant removed the case to federal court in 1996, requiring plaintiff to litigate the matter in both state and federal court. Plaintiff's counsel was successful in having the case remanded to state court. Much time and labor have been expended in bringing this case to trial. Plaintiff has provided evidence that the contingency fee contract is reasonable as it relates to similarly litigated cases. The difficulty of litigating a cold case, as well as, employing a somewhat novel approach regarding the prosecution of an employee's claim against an employer attests to the reasonableness of the award of attorney fees. Plaintiff's attorneys David Baria and Tim Waycaster are reputable attorneys in the community and are both known for their diligence and thoroughness in representing their clients' interests. Moreover, the jury's total award of $150,000.00 compensatory and $5 million punitive damages justify plaintiff award of attorney fees in compliance with the terms of the contingency fee contract.
While it appears that the trial court may have considered some of the Rule 1.5 factors, some of the findings are clearly inaccurate. For example, the statement that the case has been litigated for 9 years is misleading. Cook's present counsel began representing him on May 6, 1996, while the trial was held in October 2000. Furthermore, there is no record of the proceedings wherein the attorneys' fees were awarded by the circuit judge because a court reporter was not allowed to record the proceedings. Additionally, there is no record of the fee customarily charged in this locality or the time and labor required.
¶ 42. Clearly, the trial judge abused her discretion in awarding this extreme amount of attorneys' fees. The McKee factors should have been applied by the trial judge in determining the amount of attorneys' fees to be awarded, and any award should be supported with factual determinations. Browder v. Williams, 765 So.2d 1281, 1288 (Miss.2000). The award of attorneys' fees should be vacated and remanded to the trial court. The trial judge should reconsider this issue in light of the McKee factors and support a new award, if any, based on findings of fact and conclusions of law concerning those specific factors. Additionally, the trial judge should rule accordingly in light of the remittitur. If the remittitur is not accepted by the plaintiff, and a new trial is ordered and no punitive damages are awarded by the jury, then attorneys' fees cannot be awarded by the trial court.

CONCLUSION
¶ 43. We affirm the judgment to the extent that it awarded Cook $150,000 in compensatory damages. We remit punitive damages of $5,000,000 to $500,000. If Kenneth D. Cook accepts such remittitur so as to reduce the punitive damage award to $500,000 within ten days after the judgment of this Court becomes final, then the award as reduced will be affirmed. The award of attorneys' fees is vacated and remanded to the trial court for further *488 proceedings consistent with this opinion. Additionally, a hearing should be held by the trial judge in accordance with this opinion to determine attorneys' fees strictly adhering to the McKee factors. Otherwise, the cause is reversed and remanded to the trial court for trial upon the issues of punitive damages. If punitive damages are thereafter awarded by the jury, then the award of attorneys' fees should be addressed by the trial judge specifically using the McKee factors in her determination. However, if no punitive damages are awarded by the jury, then attorneys' fees are clearly not to be awarded by the trial judge.
¶ 44. AFFIRMED IN PART AS TO COMPENSATORY DAMAGES; PUNITIVE DAMAGES REMITTED TO $500,000 AND AFFIRMED AS REMITTED IF SUCH REMITTITUR IS ACCEPTED BY KENNETH D. COOK WITHIN TEN (10) DAYS AFTER JUDGMENT OF THIS COURT IS FINAL; IF REMITTITUR IS NOT ACCEPTED PUNITIVE DAMAGE AWARD IS REVERSED AND REMANDED FOR A NEW TRIAL ON PUNITIVE DAMAGES ONLY; VACATED AND REMANDED AS TO ATTORNEYS' FEES.
PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. EASLEY, J., CONCURS IN PART. DIAZ, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND GRAVES, J.
DIAZ, J., Concurring in Part and Dissenting in Part:
¶ 45. While I agree with most of the majority's opinion in the case, I believe that the remittitur is not warranted by the facts presented in this case. "We are not authorized to disturb a jury verdict regarding punitive damages because it `seems too high' or `seems too low'. Only where the verdict is so excessive that it evinces passion, bias and prejudice on the part of the jury so as to shock the judicial conscience may we interfere." Life Ins. Co. of Mississippi v. Allen, 518 So.2d 1189, 1194 (Miss.1987).
¶ 46. "[T]he primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others while the purpose of compensatory damages is to make the plaintiff whole." Fred's Stores of Miss. Inc. v. M & H Drugs, Inc.,725 So.2d 902, 918 (Miss.1998). "Once it is established that punitive damages in some amount should be allowed, the quantum thereof is determined by reference to certain general factors which include: (1) Such amount as is necessary for the punishment of the wrongdoing of the defendant and deterring similar conduct in the future; (2) Such amount as is reasonably necessary to make an example of the defendant so that others may be deterred from the commission of similar offenses; and (3) The pecuniary ability or financial worth of the defendant." Bankers Life & Cas. Co. v. Crenshaw, 483 So.2d 254, 278 (Miss.1985), aff'd on other grounds, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988).
¶ 47. Punitive damages were awarded in this case to punish MP&L and to deter similar conduct in the future. With this remittitur this Court destroys the effectiveness of our own decision. MP&L consciously decided to deny Cook's workers' compensation claim with no legitimate or arguable basis to do so.
¶ 48. This Court has in the past found penalties equaling 5 1/4% of net worth of companies were justified to accomplish the purpose of punitive damages. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1191 (Miss.1990). We have *489 upheld punitive damage awards equaling 150 times and 43 times the amount of actual damages. Paracelsus Health Care Corp. v. Willard, 754 So.2d 437, 445 (Miss. 1999). See also Cooper Tire & Rubber Co. v. Tuckier, 826 So.2d 679 (Miss.2002).
¶ 49. Here, MP&L's net worth was estimated to be $476,215,000. This being so, a penalty in the amount of $5,000,000 would equal 1.05% of the company's net worth and is 33 1/3 times the actual damages awarded. In contrast, a punitive damage award of only $500,000 would equal 0.1% of the company's net worth and 3 1/3 times the actual damages. This is not a deterrent to a company of this worth and size.
¶ 50. In light of the facts presented, I cannot find a justification for this remittitur. The jury, assembled from the citizens of Mississippi, heard the facts presented by both parties and as a group, decided that $5,000,000 would punish MP&L and deter similar future conduct. "We have held that in the event the jury awards punitive damages, the amount is solely within the jury's discretion unless arbitrary or unreasonable." Commodore Corp. v. Bailey, 393 So.2d 467, 471-72 (Miss.1981). There is nothing in the record to indicate that the jury's decision was arbitrary and unreasonable, and I would affirm its decision on punitive damages.
¶ 51. The jury decision on punitive damages was well within reason and in line with previous cases decided by this Court. Since the majority's lowering the amount of the punitive damages imposed on MP&L does not correctly reflect the very reason punitive damages are awarded in Mississippi, I respectfully dissent.
McRAE, P.J., AND GRAVES, J., JOIN THIS OPINION.