KING, C.J.,
Dissenting:
¶ 34. To date, an appellee’s brief has not been filed in this case. Joseph v. Mississippi Employment Sec. Comm’n, 771 So.2d 410, 413(¶ 10) (Miss.Ct.App.2000), gives two courses of action when this occurs:
We shall, in this court, at our discretion, on default of appellee, take one or the other of the following two courses: (1) When the record is complicated or of large volume, and the case has been thoroughly briefed by appellant with a clear statement of the facts, and with apt and applicable citations of authorities, so that the brief makes out an apparent case of error, we will not regard ourselves as obliged to look to the record or to search through it to find something by which to avoid the force of appellant’s presentation, but will accept appellant’s brief as confessed and will reverse. Or (2) when the record is in such condition that we can conveniently examine it, and when upon such an examination we can readily perceive a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we will take that course and affirm, thereby to that extent disregarding the default of appellee. But when, taking into view the argument presented by appellant, the basis or grounds of the judgment, and the facts in support of it are not apparent, or are not such that the court could with entire confidence and safety proceed to affirmance, the judgment will be reversed without prejudice.
Id. (citing W.T. Raleigh Co. v. Armstrong, 165 Miss. 380, 140 So. 527-28 (1932)).
¶ 35. I find that this case clearly falls within the second course of action. After reviewing the record and the appellant’s brief, I believe that the chancellor did not commit reversible error, and should be affirmed.
1. Was the trial court correct in denying plaintiffs claim for post-judgment interest?
¶ 36. Interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness; it is denied when its exaction would be inequitable. 47 C.J.S. Interest & Usury § 6 (1982). Awarding of interest is not a question of law, and it is the tendency of courts to charge and allow interest in accordance with the principles of equity so that justice may be accomplished in each case. Id. Unless a case be found, which is conclusive authority establishing a precedent, the safest way for a court of law or equity to decide all questions pertaining to interest is according to the plainest and simplest considerations of justice and fair dealings. Id.
¶ 37. On August 28,1995, $123,923.08, being the net proceeds from the sale of timber from tract 2, was ordered disbursed with Curtis Gordon to receive one-half, $62,162.46, of these proceeds. On March 29, 1996, Curtis Gordon received a partial summary judgment in the amount of $48,652 plus interest of 8% from the date of filing September 18,1986. By final order, dated August 12, 2004, the Chancellor awarded prejudgment interest of $36,975.44, for a total award of $85,627.44, but denied post-judgment interest. The record reflects the following during arguments on July 27, 2004.
THE COURT: Okay. You’ve made your proffer. The next issue. Prejudgment interest?
MR. LOGAN: Yes, sir.
THE COURT: It’s 8 percent by statute. Back when this case was filed, we had a statute that set forth 8 percent *989 about how many years ago, Mr. Everett, that statute was amended? Ten, 12 or 15 years ago?
MR. EVERETT: I think it was amended in 1989.
THE COURT: '89. So, 15 years ago while this lawsuit has lingered on this docket for 15 years or more. 8 percent post-judgment interest.
Next issue.
MR. LOGAN: Your Honor, that’s correct. It’s my understanding that the Court has discretion with regard to the percent of the post-judgment interest.
THE COURT: And that would be from what date? What is the date of the judgment?
MR. LOGAN: The date of that is March 29,1996.
THE COURT: That judgment has existed since March 29,1996?
MR. LOGAN: Yes, Sir.
THE COURT: The Court granted $48,652, together with interest, in an amount to be determined and credited against that judgment, $62,162.46 disbursed to Curtis Gordon pursuant to the Court’s order of August 28, 1995, almost a year earlier. So, he got his money before he had his judgment. That’s interesting.
The plaintiffs motion for summary judgment is denied with respect to the prayer for setting aside. Okay, we have taken care of that.
I don’t know. There is no equity in this case. It’s been on the docket way too long. It’s been on the docket 18 years. Prejudgment interest of 8 percent would run from when to when, Mr. Logan?
MR. LOGAN: The date of filing to the date of judgment.
THE COURT: The judgment would be 3/29/96. The date of filing is 9/18/86. That’s ten years. That’s enough interest. I’m going to deny post-judgment interest. Ten years’ worth of interest at 8 percent. It shouldn’t have ever happened to start with. Everybody bears some fault in that, including the Court.
¶ 38. Because of the length of time that the ease apparently remained dormant on the docket, the trial judge did not award Curtis Gordon’ any post-judgment interest. The chancellor found that the court and Curtis Gordon were to blame for the ease lying dormant on the docket, that it was against equitable principles to penalize Ralph Gordon and Inez Gordon’s estate for that failure, and that the award of ten years pre-judgment interest was enough. While the record is silent as to the specifics of the delay in bringing this case to finality, I am of the opinion that the primary responsibility to get a matter set for trial and concluded rests with the plaintiff. The docket sheets contained in the clerk’s papers indicate that between November 4, 1997, and April 12, 2004, a period of almost seven years, there were no actions taken in this case. I agree that a claimant is entitled to be fully compensated for his claim. However, the claimant cannot just sit back and not make some reasonable effort to mitigate his damages. Under the facts of this case, mitigation would have required getting this matter set for trial so a final calculation of any sums due to him could be made by the trial court. The net effect of the majority opinion is to reward the plaintiff for his slothfulness. I would therefore affirm the chancellor.

2. Was the trial court correct in awarding plaintiff attorney fees of $200 when the amount claimed was in excess of $6,000?

¶ 39. The trial court is the appropriate decision maker to award attorney’s fees and costs. Mabus v. Mabus, 910 So.2d *990 486, 488(¶ 7) (Miss.2005) (citing Miss. Power & Light Co. v. Cook, 832 So.2d 474, 478(¶ 7) (Miss.2002)). “Unless the chancellor is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal.” Id. (citing Bredemeier v. Jackson, 689 So.2d 770, 778 (Miss.1997)). In determining the reasonableness of an award for attorney’s fees, a judge may consider the following factors from Rule 1.5 of the Mississippi Rules of Professional Conduct:
1. [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;
2. [T]he likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
3. [T]he fee customarily charged in the locality for similar legal services;
4. [T]he amount involved and the results obtained;
5. [T]he time limitations imposed by the client or by the circumstances;
6. [T]he nature and length of the professional relationship with the client;
7. [T]he experience, reputation, and ability of the lawyer or lawyers performing the services; and
8. [WJhether the fee ⅛ fixed or contingent.
¶ 40. The chancellor did not award any attorney’s fees in his final judgment. It was not until the amended final judgment was entered on December 22, 2004, that the chancellor awarded $200 in attorney’s fees.
¶ 41. Curtis Gordon also complains that the court erred in not allowing any testimony on the issue of attorney’s fees. Although the court did not allow testimony on this issue, it ordered an affidavit to be filed with the court detailing the charges. The affidavit submitted to the court contained several columns of numbers detailing dates, hours, fees, and expenses. But, there was no explanation given as to what the hours, fees, and expenses were expended on. In the absence of such detailed explanations, I believe that this Court has no basis to find that the chancellor abused his discretion in awarding attorney’s fees of only $200. A copy of the affidavit on attorney’s fees is attached to this dissent as an exhibit.
3. Whether the trial court was correct in denying Curtis Gordon a lien against the real property transferred by Inez Gordon to Ralph Gordon?
¶ 42. When the issue of the lien came before the court on July 24, 2004, Curtis Gordon requested a hen on Tract 2 for the purpose of securing attorney’s fees and interest. This request was denied by the trial court. On appeal, Curtis Gordon asserts that he is a creditor, and that he should be granted a lien on the property until the monies owed to him have been paid. An equitable lien is usually impressed to reflect an express agreement that property to be burdened was intended to be held as security for the obligation of the promisor. Dudley v. Light, 586 So.2d 155, 159 (Miss.1991) (citing Acacia Mutual Life Ins. Co. v. Newcomb, 26 Del.Ch. 60, 21 A.2d 723 (1941)). However, a lien may also be impressed out of recognition of general principles of right and justice. Id.
¶ 43. In denying Curtis Gordon’s request for a lien on the real property, the court found that the purchase price had been paid. The only monies left to be paid were those of interest and attorney’s fees. The court also cited a failure by both Curtis Gordon and the court for failing to see the matter to its finality sooner. Therefore, the chancellor decided that it *991 would be inequitable to penalize Ralph Gordon, Inez Gordon’s estate, and the other parties for that failure.
¶44. As a judgment creditor, Curtis Gordon was entitled to a judgment lien. However, I would note that the decision of the chancellor to deny Gordon a lien against the real property in no way impacted the judgment lien to which he was entitled. That lien was available to him by simply enrolling the judgment in the judgment rolls maintained by the circuit clerk.
¶ 45. For the foregoing reasons, I would affirm the chancellor.
MYERS, P.J. AND CHANDLER, J., JOIN THIS OPINION.
[[Image here]]