# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00782-COA

**CORR PROPERTIES, LLC**                                                    **APPELLANT**

**v.**

**EVA PROCTOR AND PAUL QUINN, AS**                          **APPELLEES**
**ATTORNEY-IN-FACT FOR EVA PROCTOR**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2023 |
| TRIAL JUDGE: | HON. ROBERT Q. WHITWELL |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | HANNAH KATHERINE HERRIN CHRISTOPHER RYAN TOMS |
| ATTORNEY FOR APPELLEES: | WALTER ALAN DAVIS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/06/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND SMITH, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Corr Properties LLC (Corr Properties) purchased a home in The Grove at Grand Oaks (The Grove) subdivision in Lafayette County, Mississippi. The company sought to tear down a wooden fence on the property and build a brick wall in its place. Corr Properties obtained approval from The Grove before the construction began; however, the company failed to obtain an acknowledgment form from the adjoining landowners Eva Proctor and Paul Quinn (the Proctors) and the appropriate permits from the City of Oxford. Furthermore, it was revealed that a twenty-five-foot wall segment encroached onto the Proctors' property and was five feet over the height that Corr Properties had represented to The Grove. After repeated

and unsuccessful attempts to resolve the property dispute with Corr Properties, the Proctors sought an injunction in the Lafayette County Chancery Court. Corr Properties filed a counter-claim for its own injunction, asserting that the Proctors had an underground irrigation pipe that was encroaching on their property. After a hearing on the matter, the chancellor granted the Proctors' request for injunctive relief and ordered both parties to correct their encroachments. The Proctors eventually filed a motion for attorney's fees and expenses based on Corr Properties' alleged gross negligence and violation of The Grove's covenants. Corr Properties also filed a motion for attorney's fees and expenses. The chancellor granted the Proctors' motion and denied Corr Properties' motion. On appeal, Corr Properties challenges the chancery court's rulings on the motions for attorney's fees. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On August 27, 2020, Corr Properties purchased a parcel of real property located at 202 Clubhouse Drive in Oxford, Mississippi. The sole member and manager of Corr Properties was N.J. Correnti. The adjoining neighbors, Dr. Eva Proctor and Paul Quinn (the Proctors), owned the parcel of real property located at 200 Clubhouse Drive.

¶3. The previous owners of both lots agreed that a wooden fence could be built along the property line and that an underground irrigation pipe could be installed to service the sprinkler system for the owners of 200 Clubhouse Drive. The wooden fence encroached on the 200 Clubhouse Drive property, and the underground irrigation pipe encroached on the 202 Clubhouse Drive property.

2

¶4. Corr Properties sought to demolish the wooden fence because it was not "aesthetically pleasing." The company wanted to replace it with a brick wall to "match the existing house." On May 27, 2021, Corr Properties submitted an application to The Grove's "Architectural Review Committee" (ARC). A member of the committee emailed Correnti to inquire about the height of the proposed wall. Correnti represented that it would be seven feet tall. The ARC subsequently approved Corr Properties' application. In the application signed by Correnti, Clause 11 provided, "The applicant is required to solicit the opinion of adjoining property owners and to provide copies of their acknowledgment with this application." No copies of an acknowledgment form were attached to the application. The application also contains a clause that states, "Where required, appropriate building permits shall be obtained from the City of Oxford prior to the commencement of construction. Nothing contained herein shall be construed as a waiver of said requirement."

¶5. On June 22, 2021, Corr Properties submitted a request to the City of Oxford's planning department for a variance from the eight-foot height restriction. However, Corr Properties did not obtain a demolition permit to tear down the wooden fence or a construction permit to begin building the wall. On July 1, 2021, Corr Properties began demolishing the wooden fence and receiving deliveries of the construction materials on the site. Corr Properties placed those construction materials on the Proctors' side of the property line without any notice of the construction plans.

¶6. On July 3, 2021, Quinn approached the construction workers to inquire about the construction activity. He informed them that they had encroached on the Proctors' property

3

and caused some damage to the landscaping. The workers told Quinn that he needed to direct his concerns to the project manager, Jackson Duncan. Quinn got in contact with Duncan and informed him about the property issues. He also advised Duncan that they needed to get a land survey before they continued further construction. Duncan represented that the land surveyors were coming on July 5. Corr Properties later retained Williams Engineering to conduct the survey.

¶7. On July 6, 2021, Quinn met with Duncan to do a "walk through" of the area and discuss the construction plans. Duncan assured Quinn that they would repair the damage that had been done to the Proctors' property, install a new layer of fabric to prevent erosion, and plant some trees in the landlocked area to make it more presentable. When Quinn inquired about whether building permits had been obtained, Duncan represented that he talked to the permit committee,[1] and they determined that he did not need any permits. Immediately after this exchange, Quinn texted Duncan and asked if he could put the assurances in writing; if so, then in return he would give them permission to access his side to continue constructing the wall. That same day, city inspectors drove by the construction area and noticed a large number of cinder blocks stacked outside. They reported the blocks to Chris Carter, the head building inspector for the City of Oxford. Carter went to the site to investigate and was met by Duncan, who represented that they were building an eight-foot wall. Carter informed him that he needed to obtain permits and that the wall could not exceed the eight-foot-height

---

[1] The City of Oxford does not have a "permit committee." Permits are handled by the city's building inspector. The record confirms that Duncan never consulted the building inspector or anyone from that office prior to starting construction.

4

limitation. The following day, Duncan submitted an aerial photograph of the property with a line to mark the location of the wall and a handwritten note that indicated the wall would be eight feet tall. Carter subsequently issued him a fence permit and a residential building permit.

¶8.    Quinn eventually noticed that there were no survey stakes in the ground, yet the construction on the wall had resumed. The foundation had already been poured, which meant the placement of the wall had been decided without the appropriate land survey.[2] On July 15, 2021, Carter issued Corr Properties a stop-work order because the wall was in violation of the city's eight-foot height limitation. Hollis Green, director of Oxford's Department of Developmental Services, ordered that the stop-work order could be lifted, conditioned on the lowering of the height of the wall.

¶9.    On July 16, 2021, Williams Engineering conducted the land survey for Corr Properties. The survey revealed that a wall segment was twenty-five feet long and outside the boundary line, encroaching on the Proctors' property. After the survey was complete, Williams Engineering provided Corr Properties with a copy of the survey. The Proctors also retained Precision Engineering to conduct their own land survey. Precision Engineering's survey confirmed that a portion of the wall was encroaching on the Proctors' property.

¶10.   On July 20, 2021, Carter issued a second stop-work order because Corr Properties had still not lowered the height of the wall. The following day, Quinn contacted Carter and informed him that Corr Properties was still engaged in construction despite the stop-work

_____

[2] At the preliminary injunction hearing, Duncan acknowledged, "[Y]es, we may have started on the southern section before the western stakes were in the ground."

5

order being in place. By the time Carter and the code enforcement officers arrived at the site, all the construction workers had left. On July 21, 2021, Carter requested Duncan to submit an engineer's drawing of the construction plan because the previously submitted aerial photograph was not sufficient. Carter testified, "I let him by with the first set of drawings that [were] very rudimentary and trying to help them get along and get their fence built. But by the time we'd gotten on into it, things were going downhill. I told him he was going to have to provide us some drawings."

¶11. On July 22, 2021, the Proctors' attorney sent a letter to Corr Properties, revoking access to the property due to damage caused by Corr Properties. The letter ensured that the Proctors were willing to be reasonable in seeking a solution if they were provided with three things:

> 1) Information on the immediate efforts (and planned efforts) to address and correct the erosion, runoff and future runoff along the western line of 202 Clubhouse Drive;
>
> 2) A proposed plan to correct the problems presented by the "naked" drainpipe in the southwestern corner of 202 Clubhouse Drive, as well as the plan for construction and maintenance of that corner; and
>
> 3) A proposed plan to address the design and construction concerns related to the wall itself, namely the stability the adequacy of the wall itself, supported by the opinion of a licensed engineer.

¶12. On July 26, 2021, Carter received a call about Corr Properties still engaging in construction, so he went to the site with code enforcement officers. When they arrived, they found construction workers removing cinder blocks in violation of the stop-work order. The following day, Duncan sent the requested engineer drawings to Carter. Notably, the area of

the wall that was encroaching on the Proctors' property was excluded from the drawing. Precision Engineering also submitted drawings, showing the wall was encroaching on the Proctors' property. On August 11, 2021, Corr Properties' permits were revoked and a third stop-work order was issued because the drawings Duncan submitted were "shown via survey to be inaccurate with regard to the relationship of the fence to the established property line."

¶13.   On August 12, 2021, the Proctors filed a complaint against Corr Properties in the Lafayette County Chancery Court, asserting that Corr Properties had encroached on their property and should be enjoined from further construction of the wall. The following day, Correnti emailed Oxford Mayor Robyn Tannehill. Correnti expressed his frustrations with the stop-work orders and how the city officials had "mismanaged" his project. Addressing the third stop-work order, Mayor Tannehill informed him, "When this discrepancy was pointed out to us, we reached out to your engineer for verification. At that time, your engineer did not dispute that the project is in violation of the permit that is based on your submitted drawings. Therefore, we [had] no choice but to issue a stop work order." In a later email, Mayor Tannehill revealed, "[Y]our engineer indicated that both he and you were aware that the wall drawing submitted was not on your property. I don't know who to believe anymore[.]" On August 25, 2021, Corr Properties filed its answer and counterclaim, asserting that the Proctors' underground irrigation pipe was encroaching on their property. It requested injunctive relief, monetary damages, attorney's fees, and costs.

¶14.   The hearing on the preliminary injunction was held on August 27, 2021. The court ordered the preliminary injunction against Corr Properties from building the wall until it

7

completed certain directives that were included in the order. The court did not expressly grant Corr Properties' counterclaim, but the court held that the Proctors "shall remove any portions of irrigation or sprinkler system components which encroach upon the property at 202 Clubhouse Drive." Both parties were ordered to complete their respective removals by September 17, 2021. The court also held that "all matters before this Court, including requests for attorney fees and costs, are hereby held in abeyance pending further order of the Court." On July 18, 2022, The Proctors filed a motion for attorney's fees and expenses "in the amount of $14,612.50 in attorney's fees, $3,222.00 in engineering fees and costs, and $726.70 in expenses, for a total award of fees and expenses in the amount of $18,561.20." In its response, Corr Properties submitted its own motion for attorney's fees. The hearing on the motions was held on November 30, 2022. The court granted the full $18,561.20 to the Proctors but denied attorney's fees for Corr Properties. On December 12, 2022, Corr Properties filed a motion to reconsider the order on attorney's fees, but the court denied the motion and entered an order and final judgment on June 8, 2023. Aggrieved, Corr Properties now appeals.

## STANDARD OF REVIEW

¶15. The award of attorney's fees is reviewed under an abuse of discretion standard. *City of Gulfport v. Cowan Rd. & Hwy 90 LLC*, 352 So. 3d 592, 598 (¶18) (Miss. 2022) (citing *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 478 (¶7) (Miss. 2002)). "The fixing of reasonable attorneys' fees is a matter ordinarily within the sound discretion of the trial court." *Id*. (quoting *Gilchrist Tractor Co. v. Stribling*, 192 So. 2d 409, 418 (Miss. 1966)). The "trial

court's decision regarding attorneys' fees will not be disturbed by an appellate court unless it is manifestly wrong." *Id*. (quoting *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 521 (¶81) (Miss. 2007)).

## DISCUSSION

¶16.    Corr Properties contends that the court abused its discretion in granting the Proctors' motion for attorney's fees and costs or, alternatively, by denying Corr Properties' motion for attorney's fees and costs.   Corr Properties contends that because there were bilateral encroachments, the parties should either be liable for the other party's attorney's fees or bear their own costs.  We disagree.

¶17.    "Attorney's fees are a special remedy available only when expressly provided for in either a statute or contract, or when there is sufficient proof to award punitive damages." *M&R Builders LLC v. Williams Equip. & Supply Co.*, 281 So. 3d 320, 342 (¶82) (Miss. Ct. App. 2018) (quoting *Falkner v. Stubbs*, 121 So. 3d 899, 903 (¶15) (Miss. 2013)).   Here, attorney's fees were expressly provided for in the covenants for The Grove at Grand Oaks. Both Corr Properties and the Proctors were bound by these covenants.  Article X section 3(a) of the Covenant provides:

> If any provision of this Declaration is breached or violated or threatened to be breached or violated by any Owner or other person, then each of the other Owners, the Declarant and/or the Association, jointly or severally, shall have the right, but not the obligation, to proceed at law or in equity to compel a compliance with, or to prevent the threatened violation or breach of, the provisions of this Declaration. **Any person entitled to file or maintain a legal action or proceeding for the actual or threatened violation or breach of this Declaration shall be entitled to recover attorney's fees and other costs attributable to such action or proceedings**.

9

(Emphasis added). The Proctors had every right to seek an injunction action after Corr Properties breached several covenants related to construction criteria, approval of construction, repairs to damages caused by construction, prevention of debris build-up, et cetera. During the hearing on the motion for attorney's fees, the chancellor opined:

> It's the Court's ruling that the defendant failed to comply with the requirement to meet the HOA's criteria for construction and to require -- to comply with the city ordinances, including the eight-foot wall height limitation and obtaining the appropriate city permits prior to commencement and demolition and construction, in failing to obtain approval from the HOA or Architect Committee for the construction of any wall in excess of seven feet in height.

This alone was enough to justify an award of attorney's fees. However, the chancellor also found that there was sufficient proof that Corr Properties' encroachment was "willful, voluntary and intentional" and that Corr Properties acted with "callous indifference to the consequences" of its actions.

¶18. "A chancellor may award attorney's fees as punitive damages in a trespass action if the trespass is proven to be willful, wanton, or grossly negligent." *Dismiss Holding Inc. v. Knight*, 982 So. 2d 1005, 1007 (¶5) (Miss. Ct. App. 2008) (citing *R & S Dev. Inc. v. Wilson*, 534 So. 2d 1008, 1013 (Miss. 1988)). "[A]n actual award of punitive damages is not a prerequisite for an award of attorney's fees; rather, attorney's fees are warranted where 'the awarding of punitive damages would have been justified,' even if punitive damages are not awarded." *Tunica County v. Town of Tunica*, 227 So. 3d 1007, 1029 (¶54) (Miss. 2017) (quoting *Aqua-Culture Tech. Ltd. v. Holly*, 677 So. 2d 171, 185 (Miss. 1996)). Thus, "attorney fees may be awarded instead of punitive damages." *Cronier v. ALR Partners L.P.*, 248 So. 3d 861, 871 (¶39) (Miss. Ct. App. 2017).

¶19. The chancellor provided detailed findings in both his bench opinion and his orders that justify his award of attorney's fees as punitive damages. The record confirms that Corr Properties misrepresented how high the brick wall would be and failed to obtain approval from the ARC for a height variance. It failed to inform the Proctors about the construction plans and obtain an acknowledgment form to attach to its application to the ARC. Corr Properties failed to obtain the appropriate permits before tearing down the wooden fence and beginning construction on the brick wall.[3] Duncan, an agent of Corr Properties, failed to get a timely land survey and continued construction even after Quinn informed him that it was necessary to get a land survey to ensure that they were not encroaching on the Proctors' property. Duncan continued to have his construction workers build after several stop-work orders were issued. There is testimony that on one occasion, officers had to escort the construction workers off the site for engaging in construction on a Sunday, which is a violation of an Oxford city ordinance. These violations constituted misdemeanors, and Carter testified that he could have cited them several times for criminal charges. Additionally, Corr Properties submitted false drawings that intentionally excluded the encroachment on the Proctors' property. This was confirmed in the email exchange between Correnti and the mayor. Taking all this evidence into consideration, we find that the chancellor did not err in awarding attorney's fees to the Proctors.

¶20. Regarding the denial of Corr Properties' motion for attorney's fees, there was no

---

[3] There is evidence in the record that Correnti knew or should have known that he was required to obtain permits because he had made a previous request for a variance on a separate lot in the same subdivision.

evidence that the Proctors had breached any covenants. Quinn testified that the previous owners had an agreement. When asked about the sprinkler system during the hearing, Quinn represented that the line had been shut off and that the sprinkler system was no longer in use. He also voluntarily agreed to have the pipe removed:

> Q.      Are you willing to remove it if you're asked?

> A.      Yeah. If they remove all the dirt that they piled on top of it to the original grid, and I'll dig it up and remove it, or have it done, not a problem[.]

> Q.      But again, that whole sprinkler line was installed before you ever bought the property?

> A.      Correct.

The chancellor found that the Proctors "did not place the sprinkler system that encroached on Mr. Correnti's property and were not aware of any dispute about the irrigation system until [the] matter came up for hearing. . . . Quinn's actions were an unintended circumstance that was a voluntary removal and was not a willful trespass." Unlike Corr Properties, the Proctors did not intentionally violate any of The Grove's covenants or any city ordinances. They also voluntarily agreed to remedy their encroachment. Accordingly, attorney's fees were not warranted on that basis.

¶21.    Corr Properties also argues that it was entitled to attorney's fees because it believed that the Proctors breached the covenant of quiet and peaceful enjoyment. This covenant provided that residents shall

> refrain from any act or use of a Lot, Dwelling or the Common Areas which would cause disorderly, unsightly or unkept conditions or which would cause embarrassment, discomfort, annoyance or nuisance to the occupants or other

12

portions of the Property . . . or which would be in violation of any law, governmental code or regulation.

Corr Properties asserts that after the Proctors revoked access to their property, it became impossible for them to finish the wall, creating a "nuisance and unsightly condition of unfinished construction." This argument is highly unpersuasive. The record indicates that Corr Properties proceeded with construction after the revocation. It took three stop-work orders, multiple visits from authorities, and revocations of their permits to get Corr Properties to cease construction. Corr Properties' misrepresentations, incessant violations, and misconduct thoroughly discussed above is what caused the delays and created the unsightly conditions. Corr Properties is essentially asking this Court to reward the company for its own bad behavior. We decline to do so. Accordingly, we find that the chancellor properly denied Corr Properties' motion for attorney's fees.

## CONCLUSION

¶22.    Based on our review of the record, we find that the chancellor did not abuse his discretion in granting the Proctors' motion for attorney's fees and denying Corr Properties' motion for attorney's fees. The chancellor made specific findings, and his decision was supported by substantial evidence in the record. Accordingly, we affirm the judgment of the Lafayette County Chancery Court.

¶23.    **AFFIRMED.**

        **BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**