IRVING, J., for the Court.
¶ 1. Adrianne Fountain filed a petition for modification requesting that the 1993 judgment of divorce and the subsequent order regarding change of support be modified to increase the amount of child support Lowell E. “Rusty” Fountain was paying and requested a modification of visitation rights. The Chancery Court of Harrison County granted her requests and ordered attorney fees and sanctions. Rusty, feeling aggrieved by the decision of the chancellor on these issues, has appealed and assigns as error the chancellor’s application of the child support guidelines, the amount of support ordered, the modifi *476 cation of the visitation schedule, the award of attorney fees, and the sanctions against him.
¶ 2. We affirmed the modification of the visitation schedule. However, we reverse and remand for further proceedings the modification of the child support award.
FACTS
¶ 3. On March 19, 1993, Rusty and Adrianne were granted a divorce by the Chancery Court of Harrison County. This judgment awarded Adrianne primary legal care, custody, and control of the parties’ minor children, Anthony Paul, Jacques Daniel, and Christin Bernadette, subject to visitation rights vested in Rusty.
¶ 4. On August 19, 1994, an agreed order was entered modifying the judgment of divorce to increase the amount of child support paid by Rusty to $315 per month. Also, about this time, Adrianne moved to Florida with the children.
¶ 5. On May 23, 2001, Adrianne filed a petition for modification, requesting (1) that the judgment of divorce and the subsequent order regarding change of support be modified to increase the amount of child support Rusty was paying, (2) that an escalation clause for automatic increases in child support be put in place, and (3) that Rusty’s visitation rights be modified since the children had relocated to Florida. On June 17, 2001, Rusty filed his answer and counterclaim denying that the relief sought should be granted and counterclaimed and requested that Adrianne pay one-half of the cost of the children’s transportation for visitation, that his visitation be modified to establish summer visitation beginning seven days after the close of school and ending seven days prior to the commencement of school for the following school year, that he be granted visitation with the children every spring break and that his child support obligation be abated for the months of June, July, and August.
¶ 6. On November 30, 2001, the trial court entered an order finding that Rusty had failed to comply with his responsibilities under applicable discovery rules and ordered him to produce an accurate and sworn statement of income and expenses within fourteen days together with a copy of his tax returns to include all schedules and to provide a complete income and expense statement in compliance with Rule 8.05 of the Uniform Chancery Court Rules. The order also reserved the right to award sanctions for the discovery violations and reserved the right to adjust child support retroactively to August 20, 2001.
¶ 7. On February 20, 2002, the chancellor heard testimony from both parties concerning the matter of modification of child support and visitation. The chancellor issued a judgment on March 15, 2002,[1] in which she increased Rusty’s monthly child support obligation from $315 to $1,300, made adjustments to the visitation schedule, and awarded $750 attorney fees incidental to Rusty’s failure to comply with Adrianne’s discovery requests. The child support was made retroactive to November 26, 2001.
¶ 8. On March 25, 2002, Rusty filed a motion to reconsider, clarify, or amend the March 15 judgment, and Adrianne filed a response shortly thereafter. While making various minor alterations to the March 15 judgment and sustaining Rusty’s motion to quash as it related to a subpoena duces tecum that was issued earlier, the chancellor denied Rusty’s request to reconsider, clarify, or amend. Other pertinent facts will be given during the discussion of the issues.
*477 ANALYSIS AND DISCUSSION OF THE ISSUES

1. Child Support Modification

¶ 9. The standard of review employed by this Court in domestic relations cases is abundantly clear:
[Appellate courts] apply the familiar substantial evidence/manifest error rule. [We] will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. This is particularly true in the areas of divorce, alimony and child support. The word manifest, as defined in this context, means unmistakable, clear, plain, or indisputable.
Mosley v. Atterberry, 819 So.2d 1268, 1272(¶ 16) (Miss.2002).
¶ 10. Rusty argues that the chancellor committed manifest error in the determination of his child support.obligation. He alleges error in the court's use of an, “unaudited bank loan application” to determine his monthly income and a thirty percent tax rate to arrive at his adjusted gross income. He also alleges that the chancellor failed to make several deductions set forth in Mississippi Code Annotated section 43-19-101 and to consider the seasonal variations of his job as permitted by Mississippi Code Annotated section 43-19-103.[2] Rusty further asserts that his 2001 income tax return provided the best evidence of his income for child support purposes. Adrianne counters that the chancellor’s child support determination is supported by substantial evidence.
¶ 11. After reviewing the financial information submitted to the trial court, the chancellor specifically found that Rusty’s financial information was unreliable and that the evidence on financial issues given by Adrianne was more credible and deserving of the most weight. The chancellor justified her finding by first acknowledging that child support had not been modified since 1994. She then determined that Adrianne’s “Rule 8.05 Income and Expense Statement” presented a reasonable and fair view of the financial needs of the Fountain children at $3,131.41 each month. The chancellor observed that it was uncontested “that the circumstances of this case justified an upward modification of child support” and that the needs of the children had substantially increased since the 1994 modification. Additionally, the chancellor found that Rusty’s ability to take on a fair share of the cost of maintaining the three children had materially improved.
¶ 12. The chancellor also found that Rusty gave no corroborating evidence as to his true income and had, at every opportunity, delayed the search to prove his actual income in these proceedings. The chancellor explained:
While presented with various amounts of income ranging from a high of $120,000 a year to the low offered by Mr. Fountain of $25,000 per annum, the Court has accepted the figure presented by Peoples Bank as the most accurate. Although Mr. Fountain projected his income to be $10,000 per annum when applying for his home loan in November of last year, the Peoples Bank used a formula and set Mr. Fountain’s monthly earnings at $8,400.00. As Mr. Kozlow-ski [3] explained, the Bank’s financial for *478 mula blends the information provided by the loan applicant, information gleaned from tax returns, and the applicant’s backup documentation to develop an income projection. This formula generated a figure at $8,400.00 per month. The Court believes this figure to be the most reliable.
¶ 13. The figures, which were accepted by the chancellor, were computed by Ko-zlowski in conjunction with Rusty’s application for a housing loan from Peoples Bank. Kozlowski concluded that Rusty’s gross monthly income from his Back Bay Lawn Care business was $8,400 per month. Kozlowski arrived at this figure by (1) taking $5,685 which was the amount reflected on Schedule C of Rusty’s federal tax return for the year 2000, (2) adding back in $13,650 and $8,553, the amounts claimed on the schedule for transportation expenses and depreciation, respectively, to arrive at a gross income figure of $27,888 for the year 2000, (3) extrapolating from the nine-month statement of income and expenses submitted by Rusty in conjunction with his residential housing loan application to arrive at a figure for Rusty’s income for the year 2001 (the figure was placed at $120,000),[4] (5) adding the income figures which he assigned to Rusty for the years 2000 and 2001, and (6) averaging the two years’ income over twenty-four months to arrive at a monthly income of $6,042.[5] He then scaled the $6,042 figure up to $8,400, the amount which he put on Rusty’s loan application for Rusty’s monthly income. Asserting corporate privilege, Kozlowski refused to explain how or why the $6,162 figure was scaled up to the $8,400 amount. He also testified that he did not consult with Rusty before putting this $8,400 figure on the loan application and that his motivation for doing so was to get the loan approved.
¶ 14. For several reasons, we find that the chancellor manifestly erred in relying on Kozlowski’s figures as the best indicator of Rusty’s gross' income. Firstly, we observe that the figure which Kozlowski used for Rusty’s income for the year 2000 did not allow for deductions which are properly allowed on Schedule C, form 1040. Further, Kozlowski added back in amounts, a portion of which if not all, is certainly allowable before arriving at the net profit from a business operation. Secondly, as to the year 2001, Kozlowski extrapolated Rusty’s income for October through December. It is not likely that one in the lawn care business will make as much money during these months as he did during the summer and spring months. .Thirdly, the expense items claimed on Rusty’s statement of expenses and income are only a portion of the expense items which properly may be claimed as business expenses on Schedule C. Fourthly, it is no small matter that Kozlowski, scaled the monthly figure upward from $6,042 to $8,400. Whatever the motivation behind Kozlowski’s actions, it does not appear that the motivation bore any relationship to any additional income actually earned by Rusty. Moreover, it further appears that Kozlowski, a friend of Rusty, may have been motivated, at least in part, by a desire to help his friend obtain the substantial loan that Rusty was requesting to build a home.
*479 ¶ 15. Rusty and his wife, Vivian, filed a joint federal return for the year 2000. Their adjusted gross income is listed as $57,746. Also, $61,891 is listed on the line for business income, yet the net profit from Rusty’s business, on Schedule C is only $5,685. We could find no explanation in the record for this discrepancy, and neither party discussed it in his brief.
¶ 16. Rusty filed a separate federal tax return for the year 2001. His adjusted gross income listed on that return is $86,135. Randy testified that his 2001 tax return, as well as his 2000 tax return, had been filed with the Internal Revenue Service.
¶ 17. We appreciate the chancellor’s frustration in trying to realistically assess Rusty’s true income, particularly in light of Rusty’s failure to timely produce financial information. However, we cannot accept the assertion that the figures provided by Kozlowski were sufficiently reliable to use in the modification of Rusty’s support obligations. Therefore, we reverse and remand this issue to the chancellor for further proceedings.
¶ 18. Rusty also argues that the chancellor (a) erroneously used a tax rate of thirty percent in arriving at his adjusted gross income for application of the child support guidelines set forth in Mississippi Code Annotated section 43-19-101(1) (Rev. 2000), (b) failed to deduct other mandatory deductions from his gross income such as Social Security payments, (c) failed to take into consideration the seasonal nature of his business and the attendant fluctuation in income flowing therefrom, (d) failed to consider the fact that he has other children residing in his home, and (e) failed to make a written determination that the application of the guidelines set forth in Mississippi Code Annotated section 43-19-101 (Rev.2000) were reasonable since the gross income figure accepted by the chancellor exceeded $50,000.
¶ 19. Since we are reversing and remanding the chancellor’s modification of the child support award based on the erroneous income figures, we need not address Rusty’s arguments as set forth in the preceding paragraph except to say that on remand the chancellor shall first determine Rusty’s gross income in accordance with the provisions of section 43-19-101(3)(a). His monthly adjusted gross income shall then be determined in accordance with the provisions of section 43-19-101(3)(b)(c)(d) and (e). The amount of child support shall be determined by applying the provisions of section 43-19-101(1)(2) and (4).
¶ 20. If on remand, the chancellor does not accept the amount of income shown on any of Rusty’s filed tax returns as his true income, the chancellor shall make specific findings as to why the amount was not deemed reliable. We note in the case before us, the chancellor observed that Rusty had given various estimates at different times regarding his income. We also note, however, that Rusty testified that when he gave some of the amounts, he was simply estimating his income and that, in preparation for completing the 2001 return, he discovered expenditures that he had not previously considered when he gave Peoples Bank the nine-month statement of income and expenses which was extensively relied upon by Kozlowski in arriving at the monthly income figure placed on Rusty’s loan application.
¶ 21. The dissent argues that the chancellor should be affirmed on all issues and, at one point, accuses this Court of relying on Rusty’s tax returns, although at another point, the characterization of the Court’s position is changed to expressing concern about, rather than relying on, *480 Rusty’s 2001 tax return. The dissent then asserts that it is not the prerogative of this Court to “decipher and correct mistakes in the financial information submitted by the parties.” Even a casual reading of the Court’s opinion will reveal that we neither rely on Rusty’s tax returns nor attempt to correct anything. We accept and discuss only the evidence which the chancellor used to undergird her decision. The chancellor was clear that she considered the financial figures given by Kozlowski as the most reliable. It was this financial evidence that the chancellor used to compute Rusty’s child support amount.
¶ 22. We want to be clear that, on remand, the chancellor is not bound by the income listed in Rusty’s federal tax returns if she determines that amount to be inaccurate. All we hold, is that the computation made by Kozlowski was unreliable and that the chancellor erred in basing her decision on that computation.

2.Modification of Child Visitation

¶ 23. Rusty argues that he has been deprived of his full visitation previously awarded due to Adrianne’s voluntary relocation. He explains that the chancellor ignored the fact that the distance involved in traveling to Tampa, Florida makes it difficult, if not impossible, to exercise weekend visitation. He further asserts that the chancellor failed to put any requirement of notice of when Ms. Fountain intended to exercise her weekend visitation during the summer period. Adrianne counters that Rusty’s assertions, that the chancellor abused her discretion and committed manifest error in modifying the visitation schedule, are absurd. She asserts that the visitation schedule provided by the chancellor is well within the normal visitation allowance for the circumstances of this case.
¶ 24. The original visitation schedule gave Rusty the following periods of visitation:
1. Weekend visitation one weekend per month.
2. Week visitation according to Mr. Fountain’s work schedule for each Monday, Tuesday and Wednesday period he has off from his work;
3. As to Christin visitation was phased in over a period of time until September 1, 1993 when Mr. Fountain obtained the schedule set out in paragraphs 1 and 2 above;
4. Father’s Day weekend;
5. Holiday visitation as follows:
a. Easter, Independence Day weekend, and Thanksgiving holidays for even numbered years;
b. Spring break, Memorial Day weekend, and Labor Day week-end for odd numbered years;
c. Christmas visitation in odd numbered years from the day school lets out or December 15th, whichever is latest, until 2:00pm on December 24; in even numbered years from 2:00pm December 24 until the day prior to school resuming or January 2, whichever is earlier;
d. Summer visitation from 1995 and every year thereafter he shall have summer visitation with the children for 2 consecutive 3 week periods with Ms. Fountain enjoying one weekend visitation during each of the two (2) three (3) week periods.
¶ 25. The chancellor modified the visitation schedule as follows:
1. Summer visitation for six (6) weeks with Ms. Fountain having alternating weekend visitation.
2. Christmas, Thanksgiving and Spring Break remained unchanged.
3. Alternating weekend visitation,
*481 4. Mr. Fountain shall have visitátion with the minor children when Ms. Fountain is in the Biloxi area and Mrs. Fountain shall provide to Mr. Fountain one weeks’ notice of her plan to visit the Biloxi area except for emergencies such as funerals and medical emergencies.
¶ 26. “The chancellor has broad discretion when determining appropriate visitation and the limitations thereon.” Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994). In determining visitation, the chancellor must continue to “keep the best interest of the child as his paramount concern while always being attentive to the rights of the non-custodia! parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and his child.” Id.
¶ 27. We cannot say that the trial court abused its discretion in ordering the modified visitation schedule. The schedule clearly allows ample opportunity for both parents to nurture an everlasting bond with their minor children.

5. Award of Attorney Fees

¶ 28. Rusty argues that the chancellor erred in awarding attorney fees to Adrianne because the chancellor failed to make a finding as to the appropriateness of the award and specific findings as to what work was performed. Adrianne counters that the trial court’s award of $750 to offset costs of securing Rusty’s compliance with discovery requests is reasonable and justifiable.
¶ 29. The trial court is the appropriate entity to award attorney fees and costs. Miss. Power & Light Co. v. Cook, 832 So.2d 474(¶7) (Miss.2002). A trial court’s decision on attorney fees is subject to the abuse of discretion standard of review. Id.
¶ 30. Our supreme court has recently held that “where a party’s intentional misconduct causes the opposing party to expend time and money needlessly, then attorney fees and expenses should be awarded to the wronged party.” State v. Blenden, 748 So.2d 77(¶33) (Miss.1999).
¶ 31. Rusty’s contention that the trial court erred in awarding attorney fees in its final judgment is without merit. The record reflects that Adrianne, by a November 14, 2001 motion, requested the chancellor to implement sanctions against Rusty because of his failure to timely respond to her interrogatories and request of documents. By its November 30, 2001 order, the chancellor stated that she would take Adrianne’s request under advisement and reserve her ruling on sanctions for a later date. At trial, Adrianne again asked for sanctions because of Rusty’s failure to be forthcoming with his financial information. The chancellor agreed to consider Adrianne’s request, and Adrianne submitted an itemized legal services statement which had been prepared by her attorney. In the final judgment, the chancellor found that “[Rusty] at every opportunity delayed the search to prove his actual income in these proceedings.” The chancellor also described Rusty as “recalcitrant.”
¶ 32. We find no error in the chancellor’s assessment and uphold the award of attorney fees and costs.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY AS TO MODIFICATION OF VISITATION SCHEDULE AND AWARD OF ATTORNEY FEES IS AFFIRMED AND AS TO CHILD SUPPORT MODIFICATION IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TWO-THIRDS *482 TO THE APPELLANT AND ONE-THIRD TO THE APPELLEE.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, MYERS, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J.

. The judgment is actually dated March 15, 2001, but that obviously is a mistake.

. At the time of trial, Rusty was self-employed in the lawn care business. His business was known as Back Bay Lawn Care.

. Kozlowski was a loan officer with Peoples Bank. Kozlowski was Rusty's primary contact in Rusty and Adrianne's effort to obtain a loan to build a new home.

. The income figure claimed on the nine-month statement of income and expenses was $135,000. The amount of operating expenses claimed was $45,352, leaving net profit of $89,648. The items included in the operating expense figure were wages and labor, supplies, fuel-equipment and vehicle, insurance, postage, taxes telecommunications, and new equipment.

. However, based on the figures which he testified that he used, the monthly amount should have been $6,162.