IN THE SUPREME COURT OF MISSISSIPPI
NO. 2000-CA-01866-SCT

*PHILLIP MOSLEY, SR.*

*v.*

*ANGELA ATTERBERRY*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2000 |
| TRIAL JUDGE: | HON. SARAH P. SPRINGER |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LISA MISHUNE ROSS |
| ATTORNEY FOR APPELLEE: | MELISSA LYNN GEARHART |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 06/20/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/11/2002 |


**BEFORE SMITH, P.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. On October 22, 1999, the Lauderdale County Chancery Court granted a divorce to Phillip Mosley, Sr. and Angela Mosley (now Atterberry) on grounds of irreconcilable differences. In the same hearing, the chancellor awarded custody of the couple's minor children, Roshonda and P.J., to Angela and directed Phillip to pay child support and alimony to Angela. Phillip has since appealed the divorce decree to this Court, which we recently affirmed in part and reversed in part, in *Mosley v. Mosley*, 784 So.2d 901 (Miss. 2001)(*Mosley I*).

¶2. Only four months after the final judgment was entered, during the pendency of *Mosley I*, Phillip filed a motion seeking modification of custody, child support and alimony. The chancellor modified the custody arrangement and child support in part, denying the rest of Phillip's motion. Aggrieved, Phillip now raises numerous issues on appeal, including that Angela's false testimony contaminated the record sufficiently to warrant modification of custody; that alimony should be terminated due to Angela's post-divorce sexual conduct; that he should be reimbursed for child support paid when the child was not with Angela; and that custody of his son should be granted to him. He also raised three issues which were not raised at the trial level, at least insofar as the record before us reflects, and thus are not properly before this Court: namely, that the chancellor failed to strike Angela's false testimony, that the modified child support was in excess of the 14% guideline, and that Angela should have to pay child support to him for Roshonda. Those which are properly before this Court can best be summed up in Phillip's final assignment of error, as modified:

> **WHETHER THE CHANCELLOR WAS MANIFESTLY WRONG AND/OR ABUSED HER DISCRETION IN FINDING THAT THERE WAS NOT SUBSTANTIAL EVIDENCE TO WARRANT A MODIFICATION IN CUSTODY AND OTHER MODIFICATIONS REQUESTED.**

¶3. Because we conclude that the chancellor adequately considered the facts, applied the correct law, was not manifestly wrong and did not abuse her discretion, we affirm.

## FACTS

¶4. The facts surrounding the divorce of Phillip and Angela are fully explained in *Mosley I*, 784 So.2d at 902. Briefly stated, the chancellor heard arguments from both sides before granting a divorce based on irreconcilable differences. *Id.* at 903. After an on-the-record review of the *Albright* factors, the chancellor awarded custody of both children to Angela, along with periodic alimony of $150 a month and lump sum alimony in the amount of $150 a month until those payments totaled $10,000. *Id.* The chancellor also ordered that Phillip pay child support for both children, in the total sum of $600. *Id.*

¶5. On appeal, we noted that Roshonda had actually lived with Phillip during the time that Phillip had paid child support to Angela, and we held that Phillip was entitled to reimbursement for part of that child support in an amount to be determined on remand. *Id.* at 905. We affirmed the chancellor on all other issues. *Id.* at 910.

¶6. Four months after the chancellor's initial ruling, and before *Mosley I* was decided, Phillip filed a petition for modification (then later an amended petition) in which he alleged, inter alia, that there had been substantial and material changes in the circumstances which warranted a modification of custody and support of his daughter Roshonda and son, Phillip, Jr. (P.J.). Specifically, Phillip claimed in his petition:

> 1) that Angela continued to have an adulterous, out-of-wedlock and abusive relationship with her live-in boyfriend, had become pregnant by him, and had lied about both the relationship and the pregnancy during the divorce hearing;

> 2) that Angela had consistently refused to provide Phillip with her address or telephone number, in violation of UCCR 8.06, and forced Phillip to pick P.J. up at a local sheriff's office for visitation;

> 3) that Angela had refused to take custody of Roshonda and denied Roshonda's attempts to visit, and that he was entitled to reimbursement of the child support payments he made to Angela during the time Roshonda was in his custody;[1]

> 4) that Angela had fraudulently used Roshonda's social security number to obtain credit for herself; and

> 5) that Angela has not been gainfully employed since gaining custody of the children and will not maintain stable employment.

¶7. Angela did not file any response to the petition, but addressed these allegations in her response to interrogatories and during her testimony at the modification hearing. She testified that she still saw her boyfriend on weekends and that she was pregnant by him at the time of the divorce, but did not know it at that time.[2] Phillip testified that he knew about the relationship between Angela and her boyfriend at the time of the divorce, and had known about it since May of 1997.

¶8. Angela admitted that she had not been timely in advising of her new addresses and explained that during the year between the divorce hearing and the modification hearing, she had lived at three different

addresses: first, with two friends for a couple of weeks; next she moved in with her boyfriend for approximately 4 months until she "could get on her feet;" and finally she rented a three-bedroom, two-bath townhouse where she has lived ever since, testifying that her rent was current and "paid up for three months." She admitted that her boyfriend stays at her residence occasionally on weekends when he is in town. Phillip testified that on one occasion when he came to get P.J. for visitation, he could not find her at the first address she had given. However, on that occasion he located her by telephoning and getting the new address. There was no testimony that Angela's failure to notify was done deliberately or to thwart the visitations with P.J.

¶9. Angela also testified that she had for some time been gainfully self-employed in the resale business, selling clothes, furniture and other things, and had recently obtained a business license to open "Angie's ReSale Shop" in the Atlanta area.

¶10. The chancellor heard testimony from Roshonda (then 18 years old and a student at Meridian Community College), as well as from Phillip and Angela, with regard to the allegations that Angie had refused to take custody of Roshonda and had denied her visitation. Roshonda admitted that Angela had asked her to come live with her in Georgia, in compliance with the chancellor's custody order in *Mosley I*, but she refused to go. Roshonda testified that she never planned to go with her mother, because she did not want to leave Meridian ("a stable place") to go a place where "I have no whereabouts" and did not want to live with Angela because of Angela's "living conditions."

¶11. When asked about any money she had received from Angela or that Phillip received, Roshonda said she received only "about three or four hundred dollars" soon after the divorce, but had not received anything lately.

¶12. Roshonda also confirmed Phillip's allegation that Angela had apparently used Roshonda's social security number, without permission, to obtain credit.

¶13. Phillip's testimony as to why he wanted full custody of P.J. was scant and general. He said that Angela was unstable, as evidenced by her having moved three times in the year between the divorce and the modification hearing; that she did not have verifiable income because she is self-employed; and that he did not know how she was taking care of P.J. financially (other than the support he was sending). After testifying that he was not making a judgment about Angela's morality from living with a man outside of wedlock, he stated: "she's a young lady. She's going to have relationships." He went on, however, to make unsubstantiated and unexplained allegations that her boyfriend is "a drug dealer." He offered no specific information. When asked on cross examination if this was his only objection to her boyfriend, he stated "Yes." There was no other testimony or evidence offered other than Phillip's bare allegations.

¶14. Phillip reiterated his complaints about the failure to provide current addresses; the difficulties in reaching her by telephone; and her failure to reimburse him for child support payments he made on behalf of Roshonda while she was actually residing with him. When asked by his counsel if he would request child support from Angela for P.J., if he was granted full custody, he replied "I don't have to have child support" and "I don't need to have financial help from her." However, soon thereafter, still on direct examination, while explaining his arrearages in child support payments, he testified that his "utilities are way behind, my bills were way behind, and, you know, the well is running dry."

¶15. After hearing testimony on each of Phillip's requested modifications, and arguments from both sides,

the chancellor rendered a bench opinion and judgment in which she concluded that Phillip had failed, in part, to meet his burden of proving the material and substantial change in circumstances required for modification. She specifically found, inter alia:

1) that the burden was on Phillip to show material and substantial change in circumstances necessary to require modification of the previous judgment.

2) that custody of Roshonda was awarded to Phillip, but she left custody of P.J. with Angela because Phillip had not proven a material and substantial change in circumstances surrounding P.J's custody;

3) that Phillip's child support obligation should be reduced from $600 a month to $400 a month;

4) that Phillip's request that periodic alimony be modified or terminated should be denied, finding that there was no proof that the boyfriend was supporting Angela, but their residing together for several months was a cost reducing situation;

5) that Angela had committed perjury in her court, and was in contempt for violation of Rule 8.06 (notification of address changes) and ordered her to be incarcerated for 2 days in the Lauderdale county jail;

6) that Angela should in the future inform Phillip of any changes in address within five days; and

7) that the parties should not exchange P.J. at a sheriff's office and should not otherwise harass each other;

8) that Phillip had not come in with clean hands, and his failure to pay child support constituted contempt, but he had purged himself by paying the arrearage.

## STANDARD OF REVIEW

¶16. In *Mosley I*, we reiterated the familiar standard of review for a domestic relations case:

This Court applies the familiar substantial evidence/manifest error rule. This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. This is particularly true in the areas of divorce, alimony and child support. The word "manifest," as defined in this context, means "unmistakable, clear, plain, or indisputable."

*Mosley I*, 784 So.2d at 904 (internal citations omitted).

## DISCUSSION

¶17. A complication in our review arises because Angela did not file a brief with this Court in response to Phillip's brief on appeal. As this Court has stated, "[f]ailure of an appellee to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of appealing party, that there was no error." *Dethlefs v. Beau Maison Dev. Corp.*, 458 So.2d 714, 717 (Miss. 1984). However, automatic reversal is not required. Moreover, where child custody is at issue, the Court is compelled to review the record, despite a failure to file a brief. *Muhammad v. Muhammad*, 622 So. 2d 1239, 1242 (Miss. 1993). This we have carefully done and have found no manifest error or abuse of discretion.

¶18. Phillip's primary concern seems to be that the chancellor turned a blind eye to the record contaminated by Angela's perjury and did not strike any of her perjured testimony from the record. He recommends that we deliver the death knell to Angela's claims "by striking all of her testimony and reversing and rendering the chancellor's award of alimony and custody " In support of this argument Phillip cites *Pierce v. Heritage Props., Inc.*, 688 So.2d 1385 (Miss. 1997), and *Scoggins v. Ellzey Beverages, Inc.*, 743 So.2d 990 (Miss. 1999). Unfortunately for his argument, neither case is germane to the case sub judice. In both of the cited cases, this Court affirmed the trial court's dismissal of an action because the plaintiff submitted false answers during the discovery phase of the lawsuit. Moreover, no motion to strike or other objection of that nature was made by Phillip, insofar as we can tell from the record before us.

¶19. Honest and truthful testimony in trials is the basic foundation of our court system. In the case sub judice we have Angela, a respondent to a petition for modification who admits that she lied about several matters at the divorce hearing that determined custody, child support and alimony. The chancellor addressed the seriousness of taking an oath to tell the truth and admonished Angela that failing to tell the truth brings into question all her testimony. Further, based on Angela's perjury,[3] as well as on Angela's failure to comply with UCCR 8.06, the chancellor ordered that Angela should be incarcerated for two days. The chancellor did not further elaborate on the specific incidences of perjury or what effect, if any, the perjury might have had on the previous custody, child support or alimony awards, but it is clear that she considered it in her decision-making process.

¶20. During the modification hearing, Phillip's attorney questioned Angela about lies she had told regarding her pregnancy at the hearing on December 17, 1999 (subsequent to the divorce granted in November 1999). When Angela said that she could not remember exactly what she stated in December, the following exchange took place with Phillip's attorney:

> Ms. Clayton: Okay. **We have a transcript, transcribed, transcription of that hearing** and you said that you were four weeks pregnant in December, but, that was a lie; right?
>
> Court: Ms. Clayton, please show her if you have it transcribed, please show her what the testimony -
>
> Ms. Clayton: **We don't have it transcribed,**[4] but, did you tell her that?
>
> Angela: I'm not sure.

(emphasis added).

¶21. Angela subsequently admitted that she lied to the court about her stage of pregnancy. Angela also admitted she had lied when she had testified at the divorce proceeding that she was not sexually involved with another man. As previously noted, Phillip had already known of her relationship for months before the divorce was filed. From the record, these are the only times that Angela admitted having committed perjury, though Phillip's attorney was able to cast serious doubts concerning Angela's veracity in several other instances.

¶22. The chancellor, as the fact-finder in a domestic relations case, must decide who is telling the truth and what weight to give to the testimony of someone who admits lying. Although we might have found differently had we been in her shoes, it is not our place to substitute our judgment for that of the trial court, absent manifest error or abuse of discretion.

## CONCLUSION

¶23. The same chancellor heard all the testimony at all the hearings in this case. She was in the best position to determine credibility and the materiality of any false statements. Her eight-page opinion addressed each of the requests made by Phillip in his petition for modification. She granted modification as to Roshonda's custody and the reduction in child support. She denied modification of custody of P.J. and alimony payments. She applied the proper standard of review. We find no manifest error or abuse of discretion, and thus we affirm the judgment.

¶24. **AFFIRMED.**

> **PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J**.

> **McRAE, PRESIDING JUSTICE, DISSENTING:**

¶25. I respectfully dissent to the majority's holding in this case. The actions and immoral lifestyle of Atterberry clearly warrant a review of the chancery court's original finding which gave custody of the parties' children to her.

¶26. We have held*:*

> [r]egarding the substantive law to apply in child custody modification suits, the movant must prove by a preponderance of the evidence that since the entry of the judgment or decree sought to be modified there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such adverse change has been shown, the moving party must show by preponderance of the evidence that the best interest of the child requires the change in custody.

*Morrow v. Morrow,* 591 So.2d 829, 833 (Miss. 1991) (citing *Newsom v. Newsom,* 557 So.2d 511, 515-16 (Miss.1990)). Additionally, this material change must be considered in the totality of the circumstances. *Tucker v. Tucker,* 453 So.2d 1294, 1297 (Miss.1984); *Kavanaugh v. Carraway,* 435 So.2d 697, 700 (Miss.1983).

¶27. The totality of the circumstances shows that Mrs. Atterberry should not have custody of either of the two children from her marriage to Mr. Mosley. Several incidents have come to light since the divorce which should be considered:

1) Atterberry and the parties' minor son, P.J., lived with her boyfriend for a few months and she admitted having sexual relations with him during this time;

2) Atterberry committed perjury by telling the chancellor at the divorce hearing that she and her boyfriend were not in a relationship and not revealing the fact that she was four months pregnant;

3) Atterberry admitted to cheating on her 1998 and 1999 income taxes;

4) Atterberry committed credit card fraud by using her daughter's Social Security number to establish credit in her own name; and

5) Atterberry was negligent in seeing that P.J. got to school. He was tardy sixty-nine times and had twelve absences in one year.

6) Atterberry interfered with Mosley's visitation with P.J.

¶28. At the modification hearing, Atterberry admitted to each of these acts. The judge responded by sentencing her to two days in jail for the perjury. In *Pierce v. Heritage Props., Inc.*, 688 So.2d 1385 (Miss. 1997), we vacated a $500,000 judgment because Pierce committed perjury regarding to the facts surrounding the incident that led to the award. Although the majority says *Pierce* has no bearing on this case, I disagree. Atterberry's lies regarding her relationship with her boyfriend and the fact that she did not advise the court of her pregnancy played a part in the chancellor's decision to award custody of the children to her. Just like in *Pierce*, the lies affected the outcome of the case.

¶29. The chancellor also overlooked the fact that Atterberry had subjected P.J. to a living situation in which extramarital sex took place because the living arrangements were for "a cost reducing situation." Although a custodial parent's sexual relations with a third person outside of marriage do not, by themselves, warrant modification of the child custody order, there are other factors to consider. *Morrow,* 591 So.2d at 833; *Phillips v. Phillips,* 555 So.2d 698 (Miss. 1989). In addition to fornication, since her divorce Atterberry has committed crimes and lied, all the while subjecting her young son to a lifestyle unfit for an upright person, much less a child. That the majority now condones this type of action flies in the face of all precedent. Even Atterberry's 18-year-old daughter refuses to follow the court order instructing her to live with her mother because she does not want to live in the environment fostered by Atterberry.

¶30. The reasons for the chancellor's findings matter not in this instance, we should look to the facts. In *Ballard v. Ballard,* 434 So.2d 1357, 1360 (Miss.1983), we held that only parental behavior that poses a clear danger to the child's mental or emotional health can justify a custody change. I fail to understand how a home-life like this can allow P.J.'s mental or emotional health to flourish. He misses entirely too much school and is being taught by his mother that lying and promiscuity are acceptable, even normal. In addition to the factors listed above, Atterberry moved at least three times in the year after the divorce and had as many different jobs. Not only has there been an obvious change in circumstances since the chancellor awarded custody of the children to Atterberry, it boggles the mind to think that anyone could believe it to be in P.J.'s best interest to remain in her custody.

¶31. I would remand this case to the chancery court with instructions to review the custody situation.

 **EASLEY, J., JOINS THIS OPINION.**

1. The question of the reimbursement of this child support was addressed by this Court in *Mosley I*, 784 So.2d at 910.

2. During examination as an adverse witness, when Angela was asked "When did you find out?", and after answering "I don't recall," counsel for Phillip entered into evidence medical records from Northeast Georgia Health System dated approximately one month after the divorce, showing that at that time, Angela was 18 weeks pregnant.

3. Although the chancellor did not specifically mention contempt of court when she ordered Angela incarcerated for perjury, she went on to include, in the same two-day period of incarceration, Angela's violations of UCCR 8.06, which were found to be contempt of court. Thus, we consider the perjury

incarceration to be in the nature of a finding of contempt of court.

4. The chancery court docket reflects that a Motion for Relief from Judgment was filed 11-19-99 and an Amended Motion for Relief from Judgment was filed 12-10-99. However there is no mention in the docket of a hearing on December 17, 1999, and Phillip's attorney admitted that no testimony was transcribed, plus the record is devoid of any copies of such motions or orders following. Because Phillip, as appellant, was responsible for providing the record for this Court and failed to include these important documents, and Angela did not file a brief or any other documentation, we are unable to review this issue, and thus even more must rely on the chancellor's findings.

We also note that it is troublesome that the attorney used this tactic, which it appears would have been successful but for the chancellor's quick attention.