910 So.2d 486 (2005)
Julia Gates Hines MABUS
v.
Raymond Edwin MABUS, Jr.
No. 2003-CA-01728-SCT.
Supreme Court of Mississippi.
February 3, 2005.
*487 M. Judith Barnett, attorney for appellant.
Richard C. Roberts, III, Robert W. King, Jackson, attorneys for appellee.
EN BANC.
RANDOLPH, Justice, for the Court.
¶ 1. Julia Gates Hines Mabus ("Julie") and Raymond Edwin Mabus, Jr. ("Ray") were divorced by judgment of the Chancery Court of the First Judicial District of Hinds County, Mississippi. As part of the final judgment of divorce, Ray and Julie were granted joint physical custody of the children born to their union, with sole legal custody being vested in Ray.
¶ 2. On February 28, 2002, the chancery court entered an agreed order which modified the schedule of physical custody for the parties. The agreed order was very detailed, setting out specific times and dates for the beginning and end of each visitation period therein. Nevertheless, Julie decided to take the children on a trip to Maine and informed Ray that she would not comply with the court's order.
¶ 3. After Julie's notification to Ray, Ray requested attorneys Robert W. King (who testified at the hearing that he was seeking to phase out of representation of Ray) and Richard C. Roberts, III, to file a petition for contempt. Both King and Roberts provided legal services regarding the contempt action. In consultation with their client and others, King and Roberts, at the direction of their client, drafted and filed a petition for contempt in the chancery court. A hearing was held on June 11, 2003, which was attended by King and Julie's attorney, M. Judith Barnett. An agreed order was entered on that date, which decreed the following:
1. The Court has jurisdiction of the parties and the subject matter.
2. That Julie Gates Hines will have the children of this marriage... available for Raymond Edwin Mabus, Jr., at the times contemplated for his weekend and summer visitation during the month of June, 2003.
3. Until such times as the visitation orders have been violated, there is no contempt; however, the Court will reserve the right to reconvene this matter to determine if there is a contempt after the visitation periods from 6:00 p.m., Thursday, June 12, 2003, to 6:00 p.m., Sunday, June 15, 2003, which the parties agree will be heard on a Rule 5 Notice of Hearing without further process.
¶ 4. When Julie failed to return the children as required by the February order and agreed upon at the June 11, 2003 hearing, a second hearing was noticed for and held on June 23, 2003. At that hearing, Julie put on only a cursory defense, and the court determined that Julie violated the order; therefore, she was adjudicated *488 to be in contempt. The chancellor ordered Julie to be incarcerated in the Hinds County Detention Facility for a period of five days, with said incarceration to be suspended pending her future compliance with court orders, and imposed a $500.00 fine against Julie for her willful and contumacious contempt. At the conclusion of the hearing, King and Roberts submitted affidavits, which included their time records, and were cross-examined by Julie's counsel and responded to questions of the court. After considering their affidavits and live testimony, the chancellor awarded Ray attorney's fees in the amount of $13,547.50.[1]
¶ 5. Following the judgment of the chancery court, Julie appeals and raises the following issue:
I. The lower court erred in awarding the Appellee attorney fees in the full amount charged by Richard C. Roberts, III, and Robert W. King including, but not limited to, charges incurred prior to the actual filing of the petition for citation of contempt and charges incurred up to the time an actual act of contempt occurred.

DISCUSSION
¶ 6. In the absence of manifest abuse of discretion, coupled with the presence of substantial credible evidence, we should not disturb the learned chancellor's decision substituting our judgment for that of the chancellor. Holloman v. Holloman, 691 So.2d 897, 898 (Miss.1996) (collecting authorities).
¶ 7. The trial court is the appropriate entity to award attorney's fees and costs. Miss. Power & Light Co. v. Cook, 832 So.2d 474, 478 (Miss.2002). "Unless the chancellor is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal." Bredemeier v. Jackson, 689 So.2d 770, 778 (Miss.1997). This Court has stated:
It is well settled in this State that what constitutes a reasonable attorney's fee rests within the sound discretion of the trial court and any testimony by attorneys with respect to such fees is purely advisory and not binding on the trial court. We will not reverse the trial court on the question of attorney's fees unless there is a manifest abuse of discretion in making the allowance....
Mauck v. Columbus Hotel Co., 741 So.2d 259, 269 (Miss.1999) (emphasis added). "The word `manifest,' as defined in this context, means `unmistakable, clear, plain, or indisputable.'" Mosley v. Atterberry, 819 So.2d 1268, 1272 (Miss.2002). "In appeals from Chancery Court, our scope of review is limited. We will not reverse a Chancellor's findings of fact where they are supported by substantial credible evidence in the record." Hammett v. Woods, 602 So.2d 825, 827 (Miss.1992) (citing Clark v. Myrick, 523 So.2d 79, 80 (Miss.1988)) (emphasis added). "`[W]e, as an appellate court, will affirm the decree if the record shows any ground upon which the decision may be justified.... We will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors. . . .'" Tucker v. Tucker, 453 So.2d 1294, 1296 (Miss.1984) (quoting Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)). "This Court will not disturb the chancellor's opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Holloman, 691 So.2d at 898 (collecting authorities) (emphasis added). In order for *489 this Court to say that the chancellor has abused his discretion, there must be insufficient evidence to support his conclusions. Tucker, 453 So.2d at 1296-97.
¶ 8. "Where a party's intentional misconduct causes the opposing party to expend time and money needlessly, then attorney fees and expenses should be awarded to the wronged party." State v. Blenden, 748 So.2d 77, 87 (Miss.1999).
¶ 9. In the case sub judice, the chancellor relied on substantial credible evidence in the record regarding attorney's fees. Attached to the affidavit of Richard C. Roberts, III, was a detailed itemized billing statement outlining how he arrived at his fee. Additionally, there was an affidavit of Robert W. King with a detailed itemized billing statement attached outlining how he arrived at his fee.
¶ 10. The reasonableness of attorney's fees are controlled by the applicable Mississippi Rule of Professional Conduct 1.5 factors and the McKee[2] factors.
¶ 11. Both affidavits contain detailed information relevant to the McKee factors and the relevant Mississippi Rule of Professional Conduct 1.5 factors, including educational background of the attorneys, their years of experience practicing law, their experience in domestic relations matters, their regularly hourly rate, the rates actually charged to Ray Mabus, the manner in which they recorded their time, and the usual and customary rates of attorneys with similar experience in the Jackson area.
¶ 12. Both Roberts and King took the stand and subjected themselves to cross-examination by Julie's counsel regarding their fee. Additionally, the learned chancellor further examined Roberts and King regarding their fees, and both testified that the services shown on the statements were reasonable and necessary to present Ray's claim for contempt. Of equal import, Julie offered no proof to impeach or rebut the testimony of Roberts and King. The following dialogue ensued between the court and Roberts:
BY THE COURT: I have one question Mr. Roberts. I haven't seen the bill. Did you do anything in preparation for this case that you did not honestly and truly believe as a practicing attorney of 27 years experience in the Hinds County area that was not reasonable and necessary to prosecute this claim 
BY MR. ROBERTS: No sir, everything 
BY THE COURT:  in the interest of your client.
BY MR. ROBERTS:  everything on this bill was reasonable and necessary in my view to present Mr. Mabus' case the way that I felt like it should be presented. Now, this does not include other work performed for Mr. Mabus during this period of time that did not relate to the petition for contempt. This relates to the petition and  well, it actually predates. It starts with the time that I was required to spend to represent him with regard to the actions of Ms. Hines in violation of the court order.
The following dialogue ensued between the court and King:
BY THE COURT: Mr. King, I'll start out the same question with you. In your affidavit and your itemization is there anything there  and I don't know how many years you've been practicing in the Bar, but I do know it's a few in excess of 27. Is there anything that you did in preparation in conjunction for this petition for contempt that you believe not to be reasonable and necessary in *490 the representation of your client? And then I'm going to ask you a different spin on that. Is there anything in your bill that as a practicing attorney that you believe would be duplicative of the things that Mr. Roberts did?
BY MR. KING: The answer is no.
BY THE COURT: To the duplicative part.
BY MR. KING: Yes, sir. I have not done anything on this case that I didn't feel needed to be done and that I had to do in order to get ready. The bill I've got was made up on June the 10th and as we were done there on an anticipatory contempt I prepared this bill on an anticipatory hearing and I charged for five hours estimated and that's what I've got with my bill estimated. Travel to Brookhaven; conducting hearing; returning to Jackson; preparing Order on ruling, five hours. That didn't happen because we went to Hazlehurst instead of to Brookhaven and we did not have the hearing, but my bill stops with June the 11th and since June the 11th I've spent two hours or more trying to find the order that the Court signed June the 11th and I have spent time taking notes for today and I'm here spending time today to follow this hearing as it goes on.
So the only thing that does not belong in this bill is that the mileage to Brookhaven and back. I charged $42 for that, and then I ended up riding to Hazlehurst and back with my client, Mr. Mabus. So I don't have any mileage in the bill at all. So that $42 should be deleted.
But in my opinion everything that I have done had to be done. I've tried to turn a lot of this over to Mr. Roberts in an effort to try to phase out of it, but there's just no way to phase out of this case. And Mr. Roberts had a conflict so I prepared to have the hearing before the Court and then we determined that it was not appropriate to go forward at that time. So though I have worked on this several hours since then, I don't have any charges for it and I'm willing to let the estimate I have put in the bill suffice.
¶ 13. Julie cites McKee for the proposition that, "In determining an appropriate amount of attorney fees, a sum sufficient to secure one competent attorney is the criterion by which we are directed." 418 So.2d at 767 (citing Rees v. Rees, 188 Miss. 256, 194 So. 750 (1940)). Although the general rule is that appropriate attorney fees should be awarded in an amount to secure one competent attorney, the case sub judice is clearly distinguishable from McKee and Rees. A review of the billing statements admitted into evidence shows that although Roberts and King worked in collaboration with one another, and conferred at appropriate points with one another to discuss pleadings, facts and evidentiary issues, there was nothing duplicative about the work performed. In contempt actions, attorney fees are awarded "to make the plaintiff whole." Rogers v. Rogers, 662 So.2d 1111, 1116 (Miss.1995) (citing Hinds County Bd. of Supervisors v. Common Cause of Miss., 551 So.2d 107, 125 (Miss.1989)) (emphasis added).
¶ 14. We would not ordinarily expect a chancellor to make an award of this size in a routine (or as pled by Julie, "garden variety") contempt action. However, we find this action not to be routine.
¶ 15. A review of Roberts's billing and/or testimony reveals work not typically required in a routine contempt action, including research on the duration of appointment of a special chancellor, the preparation and filing of a motion for clarification of order of appointment, the presentment *491 of an executed recusal order of the chancellors to this Court, a conference with the Department of Human Services, conferences with an expert witness, in addition to the normal communications and telephone calls, preparation for the hearing, and the marshaling of exhibits.
¶ 16. A review of King's billing and/or testimony also reveals work not typically required in a routine contempt action, including a conference at the Chancery Courthouse regarding recusal with three separate chancellors (Robinson, Wise, and Owens), searching out Chancellor Singletary the following day for a conference with him, thereby receiving his signature on the order for recusal, and multiple conferences to obtain a hearing date, including a face-to-face meeting with counsel opposite to obtain her agreement on a hearing date, which was prompted by counsel opposite's failure to return his phone calls. Additionally, King traveled to Hazlehurst for a hearing.
¶ 17. It should also be noted that neither King nor Roberts included any charges for the hearing of June 23, 2003.
¶ 18. After taking the testimony and receiving exhibits, including the itemized billing statements presented by Roberts and King, the chancellor took a recess before issuing his bench opinion, wherein he stated:
I find that the attorney's fees of Richard Roberts and Bob King are reasonable, especially in view of what has gone on in this case, and find that Richard Roberts' fees in the amount of $9,360 and Bob King's fees in the amount of $4,187.50 are, as I said, reasonable and necessary and shall be paid within 30 days of today's date.
¶ 19. Subsequently, on July 8, 2003, the chancellor entered an order, which states in pertinent part:
The Court, having carefully considered the Petition, the testimony and demeanor of the witnesses on direct and cross-examination, the evidence presented by the parties, and the arguments of counsel, finds as follows:
* * *
9.
The Court finds that the attorney fees of Richard C. Roberts, III and Robert W. King are reasonable, especially in view of what has gone on in this case, and finds that said fees, in the total sum of $13,547.50 shall be paid by Julie Hines to Mr. Mabus within thirty (30) days of June 23, 2003.
¶ 20. The standard of review in the present case is abuse of discretion. We only review whether or not the chancellor abused his discretion in doing his job. "[C]ontempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss.1990). In the present case, the chancellor stated:
[I]t would be my hope that in the event there is an appeal of my decision that the appellate court would listen to the tape and not rely on the transcripts. The tone, the demeanor, the defiance evidenced in that tape cannot be captured by the transcript. And I certainly appreciate the time constraints that appeal courts have, but in the event of appeal, I would urge the court to take the time because it weighs heavily in my decision.
The chancellor, who was in the unique position to observe the parties and their demeanor, the evidence and the recordings, *492 found that Julie was in willful and contumacious contempt and that the fee award was reasonable and necessary. The chancellor stated:
I find that in this case there is a willful contumacious intentional violation of the chancery court orders of the First Judicial District of Hinds County, Mississippi, possibly one of the worst I have seen, not necessarily from the result but from what went into effectuating the actual violation.
(Emphasis added).
¶ 21. Accordingly, we are not persuaded either by Julie's argument regarding the disproportionality between the fees and the fine or the dissent's assertion that there is a presumption of unreasonableness because the fees were twenty-seven times the contempt award. Our focus includes not only the genesis of this fee dispute, i.e., the willful and contumacious contempt of a court order without which no fees would have been incurred, but also the time and labor required. M.R.P.C. 1.5.
¶ 22. Attorney and President of the United States, Abraham Lincoln, once stated: "A lawyer's time and advice are his stock in trade." Oxford Dictionary of American Legal Quotations 257 (Fred Shapiro ed., 1993).
¶ 23. There is no evidence in this record that the actual time and hourly rates submitted by the two attorneys were unreasonable. If there was a question about the reasonableness or hourly rate charge, Julie should have put on proof that the time required and rate (as compared to other rates charged in Hinds County) were unreasonable. However, this she failed to do.
¶ 24. The testimony regarding fees by the attorneys was more than just an estimate; they were submitted, uncontested facts.

CONCLUSION
¶ 25. There is substantial credible evidence upon which the chancellor relied in support of the fee award. Given the immense discretion of the chancellor and the substantial evidence in the record, it is quite clear that the chancellor did not manifestly abuse his discretion.
¶ 26. For these reasons, the judgment of the Chancery Court of the First Judicial District of Hinds County, Mississippi, is affirmed.
¶ 27. AFFIRMED.
SMITH, C.J., COBB, P.J., EASLEY AND DICKINSON, JJ., CONCUR. CARLSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.
CARLSON, Justice, Dissenting.
¶ 28. Because I find that the chancellor failed to employ the proper legal standards and determine the reasonableness of the submitted attorneys' fees in accord with the objective standards established by this Court and enumerated in Rule 1.5(a) of the Mississippi Rules of Professional Conduct, I must respectfully dissent.
¶ 29. Simply stated, the appropriate standard of review for this case is abuse of discretion. "The standard of review regarding attorneys' fees is the abuse of discretion standard." In re Estate of Gillies, 830 So.2d 640, 644 (Miss.2002) (cited in the annotations to the Mississippi Rules of Professional Conduct as Gillis v. Gillies). "The standard of review regarding attorneys' fees is the abuse of discretion standard, and such awards must be supported by credible evidence." Miss. Power & Light Co. v. Cook, 832 So.2d 474, 486 *493 (Miss.2002) (citing Regency Nissan, Inc. v. Jenkins, 678 So.2d 95, 103 (Miss.1996)).
¶ 30. Contrary to what the majority suggests, a chancellor's ruling as to the reasonableness of an attorney's fee submission is not unassailable. Stated differently, while a chancellor has considerable discretion in such matters, that discretion is not unfettered. The majority cites familiar case law indicating our apprehension in disturbing a chancellor's judgment by usurping the discretionary authority conferred upon him as an arbiter of fact, "we will not arbitrarily substitute our judgment for that of the chancellor who is in the best position to evaluate all factors. . . ." Tucker v. Tucker, 453 So.2d 1294, 1296 (Miss.1984). Accordingly, this is a fundamental tenet of our jurisprudence and this Court must be very careful when reviewing comprehensive discretionary decisions in which a chancellor is required to access the full gamut of his broad discretionary capacity in order to make decisions regarding ongoing domestic relations matters. A chancellor is certainly in the best position to render judgments regarding fact-sensitive, highly personal matters such as: child custody (Tucker v. Tucker, 453 So.2d 1294 (Miss.1984) (cited by majority on p. 488-89)), modification of child support (Clark v. Myrick, 523 So.2d 79 (Miss.1988) (cited by majority on p. 488)), custody and alimony awards (Hammett v. Woods, 602 So.2d 825 (Miss.1992) and Mosley v. Atterberry, 819 So.2d 1268 (Miss.2002) (cited by majority on p. 488)), and revisions of qualified domestic relations orders (Holloman v. Holloman, 691 So.2d 897 (Miss.1996) (cited by the majority on p. 488)). However, while we must give great deference in appraising a chancellor's judgment in these matters, the weighty admonition reiterated by the Tucker Court loses its teeth when this Court reviews common discretionary matters in which a chancellor's fact-based determination is merely surface-deep. While we defer to a chancellor's discretion, a discretionary determination must be supported by factual findings.
¶ 31. In Bredemeier v. Jackson, 689 So.2d 770 (Miss.1997), we held that "[t]he award of attorney fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards." Id. at 778. The appropriate standards are enumerated in Rule 1.5(a) of the Mississippi Rules of Professional Conduct and are unambiguous. Rule 1.5(a) clearly requires that:
A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained. (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.
Miss. Rules of Professional Conduct 1.5(a) (emphasis added).
¶ 32. In Mauck v. Columbus Hotel Co., 741 So.2d 259 (Miss.1999), this Court stressed the importance of Rule 1.5(a) analysis in determining the reasonableness *494 of an attorney's fee award, "[t]he reasonableness of an attorney's fee award is determined by reference to the factors set forth in Rule 1.5 of the Rules of Professional Conduct." 741 So.2d at 269. Not only must Rule 1.5(a) be applied, the application must be documented. In Mauck, this Court stressed the importance of a chancery court providing a complete Rule 1.5(a) analysis based on each of the eight enumerated factors and cited United States Supreme Court precedent in support of this conclusion. Id. at 271. In making our final determination we stated, "what is controlling is what is reasonable". Id.
¶ 33. In Miss. Power & Light Co. v. Cook, this Court again referenced the importance of a complete Rule 1.5(a) analysis and gave meaning to what it expects by way of credible evidence, "[c]learly, the trial judge abused her discretion in awarding this extreme amount of attorneys' fees." 832 So.2d at 487. "The McKee[3] factors should have been applied by the trial judge in determining the amount of attorneys' fees to be awarded, and any award should be supported with factual determinations." Id. at 487 (citing Browder v. Williams, 765 So.2d 1281, 1288 (Miss.2000) (emphasis added)). In deciding Miss. Power & Light Co., we vacated the attorneys' fee award and remanded the matter back to the trial court stating, "[t]he trial judge should reconsider this issue in light of the McKee factors and support a new award, if any, based on findings of fact and conclusions of law." Id. (emphasis added).
¶ 34. In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court provided guidance in making an objective and reasonable calculation of attorney fees:
The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94-1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, `billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." Copeland v. Marshall, 205 U.S.App. D.C. 390, 401, 641 F.2d 880, 891 (1980)(en banc)(emphasis in original).
461 U.S. at 434, 103 S.Ct. at 1939-40 (emphasis added).[4] In addressing the application of this objective standard, the U.S. Supreme Court specifically stated, "[i]t remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award." Id. at 437, 103 S.Ct. 1933.
¶ 35. In Walker v. United States Dep't of Hous. & Urban Dev., 99 F.3d 761 (5th Cir.1996), the Fifth Circuit echoed the idea of "billing judgment" and mandated, "[p]laintiffs submitting fee requests are required to exercise billing judgment." Id. at 769. "The plaintiffs are charged with the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised *495 billing judgment." Id. at 770. (emphasis added).
¶ 36. The idea of billing judgment as expressed by the U.S. Supreme Court and implemented by the Fifth Circuit goes hand-in-hand with our analysis in McKee v. McKee, 418 So.2d 764 (Miss.1982). In McKee, we applied Rule 1.5(a)-type factors to our reasonableness analysis of an assessment of attorneys' fees, and in so doing, we stated that, "[i]n determining an appropriate amount of attorneys fees, a sum sufficient to secure one competent attorney is the criterion by which we are directed." 418 So.2d at 767 (citing Rees v. Rees, 188 Miss. 256, 194 So. 750 (1940)). Our expression of a competent attorney was echoed in the then-applicable Disciplinary Rule 2-106(B) of the Mississippi Code of Professional Responsibility which stated in relevant part that "[a] fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee."
¶ 37. In applying reasonableness standards, a trial judge must indeed properly utilize his or her discretionary authority. In Mauck, we referred to statutory authority and logically addressed the need for a trial judge to apply the judge's own experience in determining objective reasonableness. "The Legislature gives additional guidance to courts in determining the reasonableness of attorney's fees by instructing the court to `make the award based on the information already before it and the court's own opinion based on experience and observation....'" Miss.Code. Ann. § 9-1-41 (1991). 741 So.2d at 270. While a trial judge has discretion in determining whether an attorney's fee submission is reasonable, the judge's discretion is not unfettered. Moreover, the eight enumerated factors specifically outlined by Rule 1.5(a) of the Mississippi Rules of Professional Conduct, along with objective standards of billing judgment and of a competent attorney of ordinary prudence serve as appropriate guidelines when making an on-the-record determination of a fee's reasonableness.
¶ 38. In the instant case, the standards described above were not applied and the concept of reasonable attorney fees was completely misconstrued. Accordingly, the chancellor's judgment finding the attorneys' fee submission of $13,547.50 to be reasonable not only failed to make findings of fact, it was not supported by credible evidence. In so ruling, the chancellor failed to apply even one factor enumerated in Rule 1.5(a) of the Mississippi Rules of Professional Conduct, failed to consider what constitutes a reasonable fee in this type of litigation, failed to apply any notion of billing judgment to either attorneys' proposed bill and, ultimately, failed to issue even one finding of fact to support his final reasonableness determination.
¶ 39. The majority asserts that the chancellor relied on substantial credible evidence in the record regarding attorneys' fees. In support of this assertion the majority points to the itemized bills and the attorneys' supporting affidavits, as well as the attorneys' testimony at trial. While these required submissions are relevant and do satisfy some of the requisite inquiry outlined by Rule 1.5(a) of the Mississippi Rules of Professional Conduct, the submissions represent, by their very nature, completely subjective evidence.[5] To this *496 end, these standard evidentiary submissions were purely foundational and only established, (1) how the two attorneys came up with their final fee submissions, (2) that the attorneys themselves are well regarded and very experienced having practiced law in the state of Mississippi for many years, (3) the attorneys estimate regarding an average billable rate in Hinds County, and (4) that the attorneys, themselves, believe their fees to be reasonable. In addition to these findings, a cursory review of this evidence reveals that the attorneys' bills themselves out at around $250-260 an hour and that they spent a combined 52.25 hours of their senior partner time working on this matter, a willful breach of an agreed court order. Notably, the chancellor failed to make a single finding in regards to either of the attorney's bills or affidavits in his final Order holding only that the fee submission was reasonable:
the court finds that the attorney fees of Richard C. Roberts III and Robert W. King are reasonable, especially in view of what has gone on in this case, and finds that said fees, in the total sum of $13,547.50 shall be paid by Julie Hines to Mr. Mabus within thirty (30) days of June 23, 2003.
¶ 40. On review, there is little doubt that evidence regarding attorneys' fees was submitted to and gathered by the chancery court; however, this body of evidence does little to dispel presumptions of unreasonableness that must accompany an attorneys' fee that represents twenty-seven times the amount of the contempt action itself. Accordingly, the chancellor missed an opportunity to support the ruling when he failed to make any type of on-the-record findings of fact and failed to support the ultimate conclusion with any applicable law.
¶ 41. While a chancellor has considerable discretion in these matters, the chancellor is nonetheless bound to indulge a reviewing court in the processes by which such a conclusion is drawn. On review and in the absence of factual findings, it is clear that the evidence does not support a conclusion of reasonableness. Moreover, in considering the evidence objectively, it is hard to ignore the fact that family law contempt actions of this type are heard regularly and that the preparation involved is usually minimal.
¶ 42. In affirming the chancellor, the majority takes it upon itself to apply objectively a reasonableness standard to the attorneys' itemized bill. In the absence of findings by the chancellor and in response to the majority, I conclude that while these bills contain some legitimate senior partner billing, a significant portion of the bills are comprised of simple legal research, administrative assistant work and purely unnecessary time expenditures. To avoid getting into semantics, we need only reference our former cases for guidance. In Regency Nissan, a case involving a full blown trial and multiple legal issues, this Court upheld a $7,500 attorneys' fee award. 678 So.2d at 103. We found that the submitted bill, including 82.5 hours, billed at $140 an hour, and totaling $11,714.91, was reasonable once the trial court adjusted the total amount downward. Id. Interestingly, in the instant matter, an intentional violation of an agreed child custody order, we have a time expenditure of 52.25 hours and an award of attorneys' fees that practically doubles those imposed in the Regency Nissan litigation.
¶ 43. The majority also considers the chancellor's examination of both Roberts and King as supportive of a reasonableness determination. I disagree. While the testimony spoke to the issue of double billing, it does not evidence objective reasonableness. *497 Simply asking a submitting attorney if he regards his own fee calculation as reasonable is the legal parallel of asking a tortfeasor if he regards his conduct to be that of a reasonable person. Accordingly, it does little to advance the case. In much the same way, the record is devoid of the appropriate analysis. Notably, an important question that should be asked, and as yet has not, is whether the submitted fee is a fair representation of the fee typically charged in a matter involving the willful breach of an agreed order modifying a child custody schedule. It follows that an objective inquiry of this nature would significantly aid us in our review as it speaks directly to the singular issue at hand  reasonableness.
¶ 44. In appraising the reasonableness of attorney fees a court does not employ the full breadth of its discretionary authority. Instead, a judge merely evaluates an attorney's expenditures of time and money and examines these expenditures according to objective professional legal standards established by this Court's precedent and enumerated in Rule 1.5(a) of the Rules of Professional Conduct. A chancellor should use his or her own observation and experience and render a well-reasoned judgment as to whether the billing in the matter was reasonable.
¶ 45. If we commend this case to posterity, what kind of precedent are we setting? Is it reasonable to assess attorney's fees against an opposing party according to a given firm's senior partner's billable hour rate? While the testimony of the attorneys was helpful in determining how the two senior attorneys calculated their fees, their legitimate calculations ultimately proved nothing for a reasonableness determination. An attorney's fees must be fully reviewed in consideration of objective billing standards, and an attorney's time expenditure must be calculated using billing judgment.
¶ 46. In this case, the chancellor not only failed to fully apply Rule 1.5(a), he failed to apply a billing judgment standard. The lack of on the record analysis clearly represents a missed opportunity for the chancellor to clarify for a reviewing court what the facts certainly can not  reasonableness.
¶ 47. Additionally, it appears from the record that the chancellor may have used attorney fees in this case as a vehicle to impose punitive damages upon Julie Mabus for her intentional conduct:
for the purposes of the record, it would be my hope that in the event there is an appeal of my decision that the appellate court would listen to the tape and not rely on the transcript. The tone, the demeanor, the defiance evidenced in that tape cannot be captured by the transcript ... I would urge that court to take the time because it weighs heavily in my decision.
The majority also appears to be moved by Julie's conduct, "[o]ur focus is on the genesis of this fee dispute, i.e., the willful and contumacious contempt of a court order without which no fees would have been incurred. . . ."
¶ 48. While awarding attorney fees is indeed punitive in nature, the amount of attorneys fees can never be calculated in accord with a party's culpability. If this were so, an award of attorney's fees would be based at least in part on the mens rea of the unsuccessful litigant. An attorney should not receive more money for his services just because a party-opponent is paying the bill. As iterated by the U.S. Supreme Court in Hensley, "hours that are not properly billed to one's client also are not properly billed to one's adversary...." 461 U.S. at 434, 103 S.Ct. 1933. Attorney fees in this case should be calculated *498 just as they would be if the assessing attorney's client himself were going to pay  reasonably.
¶ 49. Ray Mabus is represented by very able and ethical attorneys noted for their expertise in family law matters. Nothing in this opinion should be perceived as a criticism of these attorneys. But I fervently believe that the learned chancellor must give us more by way of a record in order for us to exercise our mandated appellate review.
¶ 50. For these reasons, I respectfully dissent inasmuch as I would reverse and remand for a new decision by the chancellor after a detailed on-the-record analysis as to the amount of attorneys fees and how he arrived at the calculated amount of attorneys fees.
WALLER, P.J., JOINS THIS OPINION.
NOTES
[1] The chancellor also ordered Julie to forfeit any balance of her physical visitation during the month of July except for her alternating weekend visitation.
[2] McKee v. McKee, 418 So.2d 764, 767 (Miss.1982).
[3] McKee v. McKee, 418 So.2d 764 (Miss.1982).
[4] The United States Supreme Court emphasizes only the words "client" and "adversary." I emphasize the remaining words in italics.
[5] I reiterate that the burden of proof, as well as production, has been placed squarely on submitting attorneys and it is their duty to prove the reasonableness of their own fee submissions. This is certainly a logical result considering the billing attorney's personal knowledge of his own bill.